Fuld, J.
The appellant Luis Rosario stands convicted of murder in the first degree stemming from the death of a *288 restaurant proprietor shot during the course of a robbery which the appellant and two accomplices committed and, on the record before us, there can be no possible doubt of his guilt.[1] Indeed, he does not contest the sufficiency of the evidence, but he does raise a question which involves an important problem in the administration of the criminal law and merits our attention and consideration. It is the appellant’s contention that the trial judge committed reversible error in refusing to turn over to defense counsel, for cross-examination purposes, statements given some time .before the trial by three prosecution witnesses.
One of the three, Basilio Otero, was an eyewitness to the robbery. He had been about to leave the restaurant when the appellant, gun in hand, ordered him to the rear of the shop and into the lavatory; at the same time, he saw the other two defendants (who had been with the appellant) push the proprietor toward the rear. From behind the closed door, he heard a shot and, after a few minutes, came out to find the robbers gone. The second witness was Josephine Rodriguez, a girl friend of one of the other defendants; it was she to whom the appellant gave his gun after the robbery, informing her that he and the others had held up a man in a restaurant, taken $75 from him and ££ shot him ” when he refused to give them more. The third witness was the appellant’s own girl friend, Jane Thompson, and to her the appellant admitted the “ shooting ”, stating that “ we had three guns and we shot together ”.
After each of these three witnesses had concluded his or her direct testimony, defense counsel requested that the witness’ statements be turned over to them for possible use on cross-examination. Instead, the statements were submitted to the trial judge for his inspection. After reading each statement, he announced that he found some ££ variances ” between statement and testimony and told defense counsel that they might examine and use only those portions of the statement containing the variances. In other words, he refused the request that the entire statement be given to the defense so that counsel might “ determine for themselves ” whether any other portions would be helpful upon cross-examination.
*289 When it appears that a witness for the prosecution has made a statement, to police, district attorney or grand jury, the attorney for the defendant, naturally enough, desires to see it in the hope that it may assist him to impeach and discredit that witness. The question then arises whether the statement should forthwith be delivered to the defense or whether it should be handed over only if it is found, on inspection by the court, to contain material at variance with the witness’ testimony in court. The United States Supreme Court has held that a defendant “is entitled to inspect” any statement made by the Government’s witness which bears on the subject matter of the - witness’ testimony (see Jencks v. United States, 353 U. S. 657, 667, 668), whereas in New York we have allowed the defendant to see and use the statement only if it contains matter which is inconsistent with the testimony given by the witness from the stand. (See People v. Walsh, 262 N. Y. 140, 149; People v. Schainuck, 286 N. Y. 161; People v. Dales, 309 N. Y. 97; People v. Bai, 7 N Y 2d 152, 155.)
The procedure to be followed turns largely on policy considerations, and upon further study and reflection this court is persuaded that a right sense of justice entitles the defense to examine a witness’ prior statement, whether or not it varies' from his testimony on the stand. As long as the statement ¡ relates to the subject matter of the witness’ testimony and? contains nothing that must be kept confidential, defense counsel • should be allowed to determine for themselves the use to be made of it on cross-examination. (Cf. U. S. Code, tit. 18, § 3500.)
A pretrial statement of a witness for the prosecution is valuable not just as a source of contradictions with which to confront him and discredit his trial testimony. Even statements seemingly in harmony with such testimony may contain matter which will prove helpful on cross-examination. They may reflect a witness’ bias, for instance, or otherwise supply the defendant with knowledge essential to the neutralization of the damaging testimony of the witness which might, perhaps, turn the scales in Ms favor. Shades of meaning, stress, additions, or omissions may be found which will place the witness’ answers upon direct examination in an entirely different light. As the United States Supreme Court has so well observed, “ Flat contradiction between the witness’ testimony and the version of the events given [previously] * * * is not the only test of *290 inconsistency. The omission from the reports of facts related at the trial, or a contrast in emphasis upon the same facts, even a different order of treatment, are also relevant to the cross-examining process of testing the credibility of a witness’ trial testimony. ” (Jencks v. United States, 353 U. S. 657, 667, supra.)
Furthermore, omissions, contrasts and even contradictions, vital perhaps, for discrediting a witness, are certainly not as apparent to the impartial presiding judge as to single-minded counsel for the accus.ed; the latter is in a far better position to appraise the value of a witness’ pretrial statements for impeachment purposes. Until his attorney has an opportunity to see the statement, it is asked, how can he effectively answer the trial judge’s assertion that it contains nothing at variance with the testimony given or, at least, useful to him in his attempt to discredit such witness?
It is true that defense counsel will undoubtedly be in a position to cross-examine, at greater length than without such pretrial statements. But there is nothing wrong in this. It does not mean that the defense will be able to go on a tour of investigation seeking generally useful information. Our decision pre[supposes that the statement relates to the subject matter of the witness’ testimony, that it is to be used for impeachment purposes only after direct examination and that the necessities of effective law enforcement do not require that the statement be kept secret or confidential. In any event, the extent of cross-examination is subject to control by the trial judge. In short, since “ the State has no interest in interposing any obstacle to the disclosure of the facts ” and since the “ defense should be given the benefit ” of any “ information that can legitimately tend to overthrow the case made for the prosecution, or to show that it is unworthy of credence ” (People v. Davis, 52 Mich. 569, 572, 573-574; People v. Walsh, 262 N. Y. 140, 150, supra), the defendant is entitled to see and use the entire statement. Otherwise, there is always a danger that something will be withheld from defense counsel which may assist him in impeaching the prosecution’s witness.
It is our conclusion, therefore, that the trial judge should have turned over to the defendant the requested statements in their entirety. In this instance, though, we deem it not amiss to consider whether the ruling which he made prejudiced the *291 defendant, whether, in other words, there was a rational possibility that the jury would have reached a different verdict i'f the defense had been allowed the use of the witness’ prior statements. (See People v. Kingston, 8 N Y 2d 384, 387; People v. Jackson, 7 N Y 2d 142, 145; People v. Mleczko, 298 N. Y. 153, 162-163.) We believe not. On the record before us, there can be no possible question of the appellant’s guilt, even apart from the testimony of the witnesses whose statements had been requested and refused. Not only was there evidence of admission to friends before and after the fatal robbery, not only was there proof of a confession to the district attorney, not only was there evidence of flight, but there was ballistics testimony indicating that the lethal bullet had issued from the appellant’s gun. And, of the utmost significance, examination of the prior statements discloses that the few variances contained in them were of a most inconsequential character.
This court is exceeding slow to disregard error as harmless under section 542 of the Code of Criminal Procedure, particularly in a capital case. However, in the one before u», we are as convinced as judges may ever be, in view of the overwhelming proof of guilt and the absence of any real inconsistency between prior statement and trial testimony, that the jury would not have decided the case differently even if defense counsel had had the use of the statements in question. In other words, it may not be said that any substantial right of the appellant was prejudiced by the trial court’s erroneous ruling.
The judgment of conviction should be affirmed.

. The jury found one of the appellant’s codefendants guilty of murder in the first degree, with a recommendation that he be imprisoned for life (Penal Law, § 1045^a); his appeal is now pending in the Appellate Division. As to the other defendant, the jury failed to agree on a verdict.