■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWARD GLADDEN, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered May 25, 1978, convicting him of

burglary in the third degree, upon a jury verdict, and imposing sentence. Judgment affirmed. In this case two police officers testified that in the early morning hours of July 14, 1977, during a major electrical power "blackout" of New York City, they were on radio motor patrol in the East New York section of Brooklyn. They observed a group of individuals who were in the process of removing furniture from a warehouse on Pitkin Avenue. When these persons discovered the presence of the police, they dropped the merchandise and fled. According to the police defendant was arrested after a struggle when he attempted to escape from the interior of the warehouse. The owner of the warehouse testified that he had locked the building on the afternoon preceding the blackout and that he arrived the next morning to find that it had been ransacked and almost all of the contents had been stolen. On the floor in the rear of the building he found a wallet containing papers bearing the name of defendant, Edward Gladden. The defendant testified that on the evening of July 13, 1977 he went to the house of one Cherry Humbert after work. In the early hours of the following morning he left to walk to his mother's home with Cherry Humbert and her sister. His route took him past the warehouse in question. As he approached, a police officer told him to get against a wall and struck him when he tried to ask a question. Defendant denied seeing any looting or noticing the fact that the entrance door to the warehouse had been torn away. He specifically denied ever being in the warehouse or taking any property from it. Defendant admitted that the wallet in evidence belonged to him but did not know how it got in the warehouse. In support of his version of the facts defendant called Cherry Humbert. She had been interviewed by a member of the District Attorney's staff prior to trial and had given a statement. On cross-examination the prosecution attempted to use this statement to impeach Cherry Humbert's credibility. Thereafter defense counsel requested an opportunity to see the witness' statement but his request was denied. Defendant has appealed from the judgment rendered upon the jury's verdict finding him guilty of the crime of burglary in the third degree. In our opinion the trial court erred in denying defense counsel's request for a copy of the pretrial statement which Cherry Humbert gave to an Assistant District Attorney and which the prosecution used for impeachment purposes upon cross-examination. In *People v Rosario* (9 NY2d 286, 289), the Court of Appeals held that the defense is entitled to a copy of prior statements made by prosecution witnesses, stating, in relevant part: "The procedure to be followed turns largely on policy considerations, and upon further study and reflection this court is persuaded that a right sense of justice entitles the defense to examine a witness' prior statement, whether or not it varies from his testimony on the stand. As long as the statement relates to the subject matter of the witness' testimony and contains nothing that must be kept confidential, defense counsel should be allowed to determine for themselves the use to be made of it on cross-examination." Although the defense in this case was seeking a copy of a prior statement of one of its own witnesses for the purpose of rehabilitation upon redirect and was not seeking a statement of a prosecution witness for impeachment purposes upon cross-examination, the same principles of fairness apply (see *People v Carter,* 48 Cal 2d 737; *State v Sharp,* 162 Ohio St 173; cf. *Walton v State,* 386 SW2d 805 [Tex]). While the requested material should have been turned over to defense counsel, under the circumstances of this case the error was harmless. In using the prior statement during cross-examination, the prosecutor made reference to only two questions asked of the witness. Neither answer was particularly damaging to her credibility. On redirect, defense counsel was

able to rehabilitate the witness notwithstanding the fact that he did not have access to the statement. In any event, the error was harmless in view of the overwhelming proof of defendant's guilt. Mollen, P. J., Hopkins, Damiani and Titone, JJ., concur.