OPINION OF THE COURT
Chief Judge Wachtler.
The defendant was convicted of felony murder and manslaughter after a jury trial. The Appellate Division affirmed his conviction with one Justice dissenting. Leave to appeal to this court was granted by a Justice of the Appellate Division.
The primary issue is whether it was proper for the prosecutor to withhold from defense counsel statements made by a prosecution witness to members of the defendant’s family. These statements were made in apparent furtherance of a bribe offer or request relating to the homicide charge on which the defendant was then awaiting trial. The defendant claims he was entitled to the statements under People v Rosario (9 NY2d 286). He also urges that they constituted exculpatory matter under Brady v Maryland (373 US 83).
On September 16, 1977 Benedicto Muniz, known as “Junior”, was shot to death in Brooklyn. The defendant and Antonio Calderone were indicted for intentional murder and felony mur *156 der on the theory that they killed Junior in the course of robbing him.
The shooting took place at the apartment of Nydia Marcano who is the sister of the defendant’s wife. Nydia Marcano resided at the apartment with her children, Jose and Angel, and with two other women, Iris Maldonado and Cecilia Matos. Jose and Cecilia allegedly witnessed the incident; Nydia and Iris were in another room but came to the scene after hearing the shots. All four of them testified for the prosecution.
Prior to trial the defendant made an omnibus motion in which he requested discovery of several items, including statements made by witnesses and exculpatory evidence. The prosecutor replied that exculpatory matter had been disclosed and that witnesses’ statements would be furnished at trial, in accordance with People v Rosario (supra).
Approximately one month before the trial began Nydia Marcano and certain members of the defendant’s family discussed whether Nydia could leave the area and thus not testify at the trial if she were given a sum of money. Nydia informed the prosecutor that the defendant’s family had initiated the conversation and offered the bribe. The defendant’s family informed his attorney that Nydia had approached them and solicited a bribe.
At the prosecutor’s behest Nydia telephoned her sister and her sister’s son Francesco, to discuss the matter further. Both of these conversations were recorded and transcribed at the prosecutor’s direction. Soon thereafter defense counsel informed the court as to what the defendant’s family had told him. He requested that a hearing be held but the prosecutor opposed it. The court denied defense counsel’s motion, apparently adopting the prosecutor’s argument that this matter could be explored on cross-examination at trial. The District Attorney did not inform the court or defense counsel with respect to his knowledge of the incident.
At the trial Nydia Marcano testified for the prosecution with respect to the homicide, without making any reference to the bribery discussions which occurred while the defendant was awaiting trial. When she concluded her direct testimony, the prosecutor furnished defense counsel with a copy of a statement she made to the police after the shooting and a copy of her Grand Jury testimony concerning that crime. He did not provide defense counsel with copies of the statements she made in connection with the bribery conversations.
*157 On cross-examination, however, defense counsel inquired as to whether she had asked members of the defendant’s family for money in return for not testifying. She stated that, on the contrary, it was they who had offered to pay her money if she would not testify. When defense counsel asked if she had informed the prosecutor of this she replied that she had and that he instructed her to call them back and act as if she were planning to accept the money. Acting on those instructions, she called her sister, Suzanna, and her sister’s son, Francesco. She stated that the calls were made from the prosecutor’s office and were taped by him.
On redirect the prosecutor began refreshing the witness’ recollection by reference to a transcript of the conversation she had had with her sister concerning the bribery. It was only at that point that the prosecutor furnished defense counsel with a copy of that transcript. However , defense counsel did not question her further concerning this incident.
After she had left the stand, defense counsel reminded the court that he had originally asked for a hearing to explore this matter. The court took the view however that the difficulty could have been avoided if the defendant’s family had been more honest with defense counsel. The prosecutor agreed that the problem arose because defense counsel “blindly proceeds on cross-examination and opens the door on the situation”. When defense counsel asked to find out what information the prosecutor had with respect to her testimony concerning the bribery, the prosecutor objected on the ground that he had already provided defense counsel with more information than he was entitled to. As a result defense counsel was never given a copy at trial of the transcript of the second recorded conversation between Nydia and the defendant’s stepson, Francesco. Although defense counsel later called Francesco to the stand, he was not questioned by either side with respect to the bribery.
As noted, the jury found the defendant guilty of felony murder and manslaughter and the Appellate Division affirmed by a divided court.
The majority at the Appellate Division concluded that the defendant’s rights under Rosario had not been violated. The court noted that, on redirect, the prosecutor furnished defense counsel with a copy of Nydia’s statements to the defendant’s wife. With respect to her statements to Francesco, the majority observed that when the defendant specifically requested that transcript, it was evident that he had no intention of using it to further cross-examine Nydia with respect to the matter which *158 had already damaged his case, and thus there was no interference with his rights under Rosario. The majority also found that the statements were not exculpatory because the witness had not suggested that the defendant was innocent. To the extent the statements could be “broadly classified” as exculpatory because they reflected on the witness’ credibility, the court concluded that the failure to furnish them would be harmless. The dissenter urged that the prior statements regarding the bribery were covered by the Rosario rule and that the defendant had not waived his right to have them furnished to aid in the cross-examination of Nydia Marcano (100 AD2d 366).
In People v Rosario (supra), we held that once a witness testifies for the People, the prosecutor is obligated to turn over to defense counsel the witness’ prior statements relating to “the subject matter of the witness’ testimony” (9 NY2d 286,289). The purpose of the rule “is to afford the defendant a fair opportunity to cross-examine the People’s witnesses at trial” (People v Poole, 48 NY2d 144, 149). The Rosario rule represents a departure from prior law which required the court to review the witness’ prior statement and reveal only those portions which the court considered to be inconsistent with the witness’ trial testimony (People v Walsh, 262 NY 140). Our court discontinued that practice in favor of a broader disclosure rule because it was “persuaded that a right sense of justice entitles the defense to examine a witness’ prior statement, whether or not it varies from his testimony on the stand” (People v Rosario, supra, at p 289). We noted that such statements are valuable not only as a source of contradictions, and that no one is better equipped or motivated than defense counsel to determine how they may be useful to the defense (People v Rosario, supra, at pp 289, 290).
The statements described in Rosario, and generally involved in subsequent cases, were those made “to police, district attorney or grand jury” (People v Rosario, supra, at p 289). The prosecutor urges that the rule should be limited to such statements and should have no application to statements, such as those at issue here, which were made to private parties. The suggested limitation is an artificial one. First, the conversations were prompted by the prosecutor and recorded by law enforcement personnel and were in their possession and control (cf. People v Spruill, 47 NY2d 869; People v McLaurin, 38 NY2d 123, 126; People v Simmons, 36 NY2d 126, 132). Second, and more fundamentally, there is no reason why defense counsel should be deprived of the opportunity to inspect a witness’ prior statement for possible use or leads on cross-examination, simply because *159 the witness made the statement to a person who is not involved in law enforcement or prosecution. Notably, the statute codifying the Rosario rule for application in future cases makes no such distinction (CPL 240.45 [1] [a]).
The prosecutor also argues that the statements are not covered by the Rosario rule because they do not relate to the subject matter of the witness’ direct testimony, but to the independent crime of bribing a witness. The prosecutor concedes that such statements have some bearing on the witness’ credibility but urges that statements relating only to credibility should not be considered subject to disclosure under Rosario. However, the very basis for the rule requiring the prosecutor to disclose a witness’ prior statements is to afford the defendant a fair opportunity to test the witness’ credibility (People v Rosario, supra, at pp 289, 290). Of course not every statement made by a witness which reflects on his credibility should be viewed as relating to the subject matter of his testimony. But the pretrial statements in this case were directly related to the witness’ trial testimony because it was that testimony which the bribe discussions were intended to affect. Thus, under People v Rosario (supra), defense counsel was entitled to the statements the witness made relating to the bribery.
In order to serve their intended purpose, pretrial statements should be given to defense counsel at a time when they can meaningfully assist in the preparation of the cross-examination. Under Rosario that should be done after the witness has testified on direct (People v Rosario, supra; but also note that in future cases, CPL 240.45 [1] [a], requires that disclosure be made before the prosecutor’s opening address in a jury trial and “before submission of evidence” in a nonjury trial). Although a delay, particularly an inadvertent one, will generally not adversely affect the defendant’s rights, delay in a particular case may cause substantial prejudice to the defense. An attorney preparing for cross-examination must not only decide what questions to ask, but what questions to avoid asking. The fairness concept embodied in the Rosario rule cannot be said to have been satisfied when pretrial statements revealing a potential trap for the cross-examiner are furnished to defense counsel only after the trap has sprung.
Thus in the case now before us, where the prosecutor knew from the witness’ prior statements regarding the bribe discussions that cross-examination on this point by defense counsel, without prior disclosure, could substantially damage the defense, disclosure of one of those statements after the door had *160 been opened was totally inadequate. Similarly, the understandable reluctance of defense counsel to further pursue the point on cross-examination, or to request a copy of the other statement for that purpose, cannot be viewed as an abandonment of the right to timely disclosure which had already been violated.
Finally, thé prosecutor urges that if the failure to turn over the statements was error, it was harmless on this record. However, we have held that harmless error analysis is inapplicable to trials held after the Rosario decision (People v Consolazio, 40 NY2d 446; People v Mattiace Indus., 52 NY2d 739). The essence of the Rosario requirement, that the prosecutor supply all of a witness’ statement or statements relating to his testimony, is that a judge’s impartial determination as to what portions may be useful to the defense, is no substitute for the single-minded devotion of counsel for the accused. Appellate judges have no advantage over trial judges in making such a determination.*
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
Judges Jasen, Meyer, Simons, Kaye and Alexander concur; Judge Titone taking no part.
Order reversed, etc.

 Because we have found reversible error was committed when the prosecutor violated the defendant’s rights under Rosario, we need not consider whether a similar result would be required under Brady v Maryland (373 US 83).