OPINION OF THE COURT
John J. Connell, J.
The following constitutes the opinion, decision and order of the court.
The defendant was charged with two counts of murder in the second degree involving the shooting death of his ex-girlfriend, an off-duty Monroe County Sheriffs Department Deputy. Huntley and Wade hearings were held over a four-day period in December 1987, after which defendant’s motions to suppress statements made by him as well as police-conducted identification procedures were denied. The trial began on February 18, 1988, following the defendant’s waiver of a jury trial. The People’s first witness was a police evidence technician through whom 34 exhibits were entered by the People during direct examination. After the first few questions of cross-examination it was discovered that numerous discoverable papers and Rosario papers had not been turned over to the defense. At that point the defense moved to strike the officer’s testimony or preclude him from testifying at trial pursuant to CPL 240.45, People v Rosario (9 NY2d 286) and Brady v Maryland (373 US 83). Accordingly, the court directed that the People turn over all Rosario materials to the defense. Court exhibits 1-9 were compiled of the materials turned over which amounted to 112 pages, much of which involved Rosario material of witnesses who had been called at the pretrial hearings. Since the majority of those documents had not been turned over at the time of the hearings, the trial was recessed and the case returned to the pretrial hearing stage. Defense counsel then asked the court, pursuant to the discovery-sanctions section (CPL 240.70), to assess any additional attorney and/or investigative fees incurred by the defense as a result of the failure of the People to comply with CPL 240.45 and Rosario to be paid by the District Attorney. This court reserved on that motion but did order as a sanction that daily transcription copies of the reopened hearings be provided to both sides and be paid for by the People. The People consented to that sanction. The cost of those transcripts was $1,972.50. In total, 169 pages had not been turned over by the People, 104 of which constituted Rosario and 1 page of which was Brady material.
*100 Since the remainder of the motion would involve awarding public county funds to the defense, the Monroe County Attorney’s office was put on notice of this motion and was allowed to be heard both at oral argument and in response papers. Defense counsel asserts that 66.3 hours of out-of-court work were expended due to the People’s failure to comply with discovery. He further asserts that his fee arrangement with his client was payment at the rate of $125 and $85 per hour, respectively, for him and his associate. Accordingly, he requests $8,215.50 as an unreimbursable award sanction.
CONCLUSIONS OF LAW
On January 1, 1980, after five years of study and debate with input from the Senate and Assembly codes committees, the Office of Court Administration, the Governor’s Office, the Criminal Justice Section of the New York State Bar Association, the New York State District Attorney’s Association, and the Legal Aid Society of the City of New York, a new discovery bill was enacted which completely replaced CPL former article 240. Its purpose was to enlarge pretrial discovery, reduce the volume of pretrial motions for discoverable material, make discovery reciprocal, and in general, to reduce the element of surprise at trial for both sides in a criminal proceeding (Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, CPL 240.10, at 358; Legis History Senate Bill 6163, Assembly Bill 8001 [1979]).
In 1961, the Court of Appeals in People v Rosario (9 NY2d 286, supra) required the prosecution to turn over all statements of persons they intended to call as witnesses at the trial at the close of that witness’s direct testimony. CPL 240.45 requires those materials be turned over to the defense after a jury has been sworn and before the prosecutor’s opening statement. Accordingly, when it became clear at the beginning of the technician’s cross-examination that the People had failed to comply with both the statutory and case law requirements, the defense made a motion for preclusion and/or striking his testimony.
The defendant’s application for attorney’s fees is pursuant to CPL 240.70 which refers to court-imposed sanctions for failure to comply with article 240. That section authorizes the court to "order such party to permit discovery of the property not previously disclosed, grant a continuance, issue a protective order, prohibit the introduction of certain evidence or the *101 calling of certain witnesses or take any other appropriate action” (emphasis added). Because that section does not specifically authorize the court assessment of attorney’s fees as a sanction, it is the People’s and the County Attorney’s position that this court has no jurisdiction to do so. The emphasized words are either in the statute for a purpose or they constitute mere surplusage. It is the belief of this court that they are in the statute to provide a broad authority for the court in its discretion to fashion appropriate remedies and sanctions when there is a violation of the discovery portions of the Criminal Procedure Law. Accordingly, this court specifically finds that it does have jurisdiction to entertain and grant the application of the defendant.
2 American Bar Association Standards for Criminal Justice § 11-4.7 (2d ed 1980) has similar language in subdivision (a) (iii), where it authorizes a court to enter
"such order as it deems just under the circumstances; or
"(b) the court may subject counsel to appropriate sanctions upon a finding that counsel willfully violated the rule or order.”
In cases where a party fails to comply with a discovery section, other States as well as the Federal system recognize the court’s authority to exercise its discretion as well as its ingenuity in fashioning appropriate remedies and sanctions (United States ex rel. Zembowski v DeRobertis, 771 F2d 1057; State v Lewis, 632 P2d 547 [Alaska Ct App]).
The order that the District Attorney bear the expense for daily copy transcripts of the rehearings was an exercise by this court of its discretion in fashioning a remedy and in imposing a sanction for noncompliance with article 240. To that sanction the People consented. As a result, the District Attorney’s budget incurred the additional expense of $1,972.50.
In determining an "appropriate response” to the prosecution’s failure to comply with article 240, "the degree of prosecutorial fault surely may be considered, but the overriding concern must be to eliminate any prejudice to the defendant while protecting the interests of society” (People v Kelly, 62 NY2d 516, 520). In the instant case, given the fact that due to the actions of the District Attorney the court had to interrupt the trial and return to the pretrial hearing stage, then issue a new decision and order based on those renewed hearings, then go back to the trial stage, then change its rehearings decision *102 based on further Rosario noncompliance by the People, then further divert its attention from the trial of the case for several days while the prosecution trickled out further Brady and Rosario materials to the defense (even beyond the deadlines set by the court), and given the further fact that the defense, because of the events described above, had to request that they be allowed to withdraw their opening statement in which they had conceded identity, there is little doubt that had this been a jury trial the case would have been mistried. The hundreds of hours expended on preparation out of court and in court by all the parties involved, as well as court personnel, would have been for naught; and the court, People and the defendant would be further burdened by attempting to select a jury in what was already a very highly publicized case, which was made more so by the media coverage of the reasons for the several false starts that took place in this case.
The People maintain that their failure was not intentional and point to the court’s finding during the trial that there was no evidence of intentional conduct on their part. This court is at a loss to explain how, or to assign a reason for, the grossly inadequate and unprepared posture the People took in response to the defendant’s initial motion. Certainly from the People’s own response, some of the materials not disclosed to the defense were as a result of a conscious decision by the People not to turn over the materials. Clearly the People’s response that they turned over what they had when they had it is not supported in any way by the record, by the court exhibits or by common sense. The People’s Rosario noncompliance, as well as their difficulty with several other issues of law that arose during the trial, compel the conclusion that the People were unprepared and/or unfamiliar with the legal principles involved.
The People further oppose the defendant’s application on the ground that defense counsel did not change his strategy significantly or his cross-examination significantly to warrant payment for the hours expended examining those reports. That position by the People is patently ridiculous. An attorney is not compensated merely for the inaccuracies he finds in the abstract of title he is examining, nor in the provisions in a contract he is reviewing that may work to the detriment of his client, nor in finding legitimate grounds to contest the probate of an estate in which his client may have an interest; but rather for the time that he expends in examining those documents and making the reasoned decisions and conclusions *103 of fact and of law that pertain to his client’s case. The fact that defense counsel was required to take time after having prepared his case for trial, to go back into the hearing stage, to make appropriate applications with respect to those rehearings, to return to the trial stage, and, in fact, to withdraw his opening statement and reexamine his trial notes, cross-referenced to one another, and to compare the new statements with those references, is certainly justified by the amount of hours expended in this case.
The question is not whether this court has jurisdiction to entertain the application, because it has that authority. Nor is the question whether or not defense counsel has expended the hours based on the failure of the People to comply with article 240, because the affidavit submitted by counsel of his efforts in this regard appears to be justified by the volume of materials withheld. Nor is the question the hourly amount charged by defense counsel to his client for his representation on this case, because that seems to be a reasonable amount given the seriousness of the charge and the practice in the legal community in this area. The real question is whether or not this court should exercise its discretion and award the additional $8,215.50 attorney fee as a sanction for the People’s failure to comply with article 240.
This court feels that sanctions are an appropriate remedy when there is a failure by either the defense or the People to comply with the appropriate provisions of article 240. In this case, the taxpayers of Monroe County have already borne the expense of four days of pretrial hearings, followed by three more days of rehearings, several days delay during the trial itself during which compliance with the court orders of discovery had to be monitored, arguments on motions heard and decisions rendered, as well as the $1,972.50 imposed as sanctions for the completion of the daily copy transcript.
Sanctions are primarily intended to punish the offending party — not to make whole the injured party. If this court were to assess the defendant’s legal fees to the District Attorney, the taxpayers of Monroe County would be the ones punished. If this court could assess a further sanction without inflicting a greater burden on the citizens of this county, it would, for certainly the actions of the People deserve it.
However, this court will exercise its discretion and, with reluctance, deny defense counsel’s application for attorney’s fees.