## (June 7, 1990)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHARLES FRIDMAN, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROUHALLAH SOHAYEGH, Appellant. —Order of the Supreme Court, New York County (Dennis Edwards, Jr., J.), entered on or about January 6, 1989, which denied defendant Fridman's motion pursuant to CPL 440.10 to vacate an April 9, 1986 judgment of said court by which said defendant was convicted of first degree grand larceny and related crimes and sentenced to various concurrent terms of imprisonment, the longest of which being 4 to 12 years, is unanimously affirmed.

Order of the Supreme Court, New York County (Thomas

Galligan, J.), entered on or about April 19, 1989, which denied defendant Sohayegh's motion pursuant to CPL 440.10 to vacate a June 6, 1986 judgment of said court by which said defendant was convicted of first degree grand larceny and related crimes and sentenced him to various concurrent terms of imprisonment, the longest of which being a term of 2½ to 7½ years, is unanimously affirmed.

Defendants in both cases were building owners whose convictions arose as a result of their harassment actions of tenants in order to force them out of apartments of buildings which they owned. The prosecutions and trials of these defendants were independent. However, in both cases the main witnesses for the People were Morris Lender and his associate, Hardmon "Chuck" Lambert, who were themselves separately prosecuted and were the main focus of the investigation into the illegitimate eviction of tenants from apartments in New York County during the five-year period from 1979 to 1984. Lender and Lambert were the individuals who were charged with actually committing the acts of harassment against the tenants involved. The two cohorts were hired by various landlords at different times.

The acts upon which the defendants were convicted occurred from 1979 through 1981; however, there was no connection between the defendants, the buildings they owned, or their prosecutions except for their use of Lender and Lambert and the District Attorney's use of the two cohorts as witnesses. Defendant Fridman's conviction was affirmed by this court (129 AD2d 539 [1st Dept 1987]) and affirmed by the Court of Appeals (71 NY2d 845 [1988]). Defendant Sohayegh's conviction was also affirmed by this court (131 AD2d 982 [1st Dept 1987]) and leave to appeal was denied by the Court of Appeals (70 NY2d 804 [1987]) and denied again on reconsideration (71 NY2d 973 [1988]).

Both defendants moved before their respective trial courts pursuant to CPL 440.10 for vacatur of their convictions, based on an alleged *Rosario* violation which occurred in both cases. Apparently, Lender and Lambert continued their work as "apartment vacators" after completing "jobs" for defendants herein. Consequently, in 1983 and 1984, both were recorded by the authorities discussing their activities with informant Arthur Ramos. The tapes of these conversations existed and were in the possession of the District Attorney's office when defendants were tried in 1985 and 1986. Fridman's appellate counsel was made aware of the existence of the tapes and received the transcripts while working on the appeal. Soh-

ayegh's trial counsel, while not made aware of the contents, knew of the tapes' existence during trial. Moreover, in that case, the prosecutor offered to present the tapes for in camera review by the court pursuant to *People v Poole* (48 NY2d 144 [1979]). While there is no judicial review of the tapes in the *Sohayegh* case, review was had in the *Fridman* case, although defense trial counsel for defendant Fridman was not made aware of their existence at that time.

Both Justice Edwards and Justice Galligan denied the CPL 440.10 motions which sought vacatur of the convictions and in which counsel for both defendants maintained that the tapes constituted *Rosario* material. The denials of the motions were based on both procedural grounds and on the finding that the material did not constitute *Rosario* material as it was temporally and topically remote in time and place from the subject of the testimony of Lambert and Lender at the instant trials and thus failed to meet the requirement of *People v Rosario* (9 NY2d 286 [1961]) that the prior statement of the witness be related to the subject of that witness's testimony at trial. The Justices' conclusion on the status of the taped conversations as *Rosario* material was correct.

The basis of the Court of Appeals decision in *People v Rosario (supra)* was the United States Supreme Court's holding in *Jencks v United States* (353 US 657 [1957]) that a criminal defendant is entitled to inspect any statement made by the prosecution witness which bears on the subject matter of the witness's testimony. (9 NY2d, *supra*, at 289.) That the material is related to the subject matter of the witness's testimony is critical and dispositive. It is well settled that "the only purpose of the *Rosario* rule is to afford the defendant a fair opportunity to cross-examine the People's witnesses at trial." *(People v Poole, supra*, at 148-149.) It is equally well settled that the right to so inspect the statements of the prosecution witnesses "is necessarily limited insofar as the statements sought must be relevant to the subject matter of the witness's testimony * * *. *Rosario* has never been interpreted so broadly as to grant defense counsel an open invitation to peruse the prosecutor's file." *(Supra*, at 149.) The contents of the tapes which defendants contend constituted *Rosario* material with respect to their prosecutions clearly concerned subject matter wholly unrelated to the testimony of Lambert and Lender in both these trials. The taped conversations concerned the two cohorts' activities in other buildings for other owners, which occurred three years after the two cohorts' last association with either defendant. The courts

correctly concluded that the material sought was not *Rosario* material with respect to these two defendants. Concur—Murphy, P. J., Sullivan, Carro, Kassal and Wallach, JJ.