■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWIN VELASQUEZ, Appellant.—Judgment of the Supreme Court, Bronx County (Bonnie Wittner, J.), rendered on October 24, 1989, convicting defendant, after a jury trial, of criminal sale of a controlled substance in the third degree, and sentencing him, as a second felony offender, to a term of imprisonment of six to twelve years, reversed, on the law, the facts, and as a matter of discretion, in the interest of justice, and the matter is remanded for a new trial.

The defendant was arrested and charged as a result of a "buy and bust" operation allegedly involving the sale of two vials of "crack" cocaine. Police Officer Ponce testified that he purchased the two vials for $10 of pre-marked buy money from a man standing at a street corner after dark. The only light provided was from a street light. Officer Ponce testified that he wrote a description of the defendant on a small envelope containing the two vials. Officer Ponce testified that he later destroyed the small envelope and he sealed the evidence into a larger envelope. Officer Pogeweit testified that he arrested defendant after receiving a radio transmission from Officer Ponce with a description of defendant. Officer Pogeweit did not write the description down. At trial, Officer

Pogeweit testified that the person he arrested was a Hispanic male with a "mustache and beard, raggedy hair, approximately five-five, one hundred and seventy pounds, wearing a long maroon jacket, bluejeans and white sneakers."

Officer Ponce testified that he had transferred all of the information from the envelope onto the buy report, so he didn't think he had any need for the envelope. The buy report stated that the seller was 170 pounds, 33 years old, and 5 feet 5 inches tall, information that coincides with information elicited upon arrest. It appears from the record that Officer Ponce destroyed the envelope before filling out the buy report.

At trial, defense counsel attempted to cross-examine Officer Ponce as to the detailed information stated in the buy report, the exact weight and age of defendant, and attempted to inquire whether the information came from the arresting officer. The court repeatedly sustained the People's objection to this line of inquiry. No application for an appropriate sanction for the non-production of this concededly *Rosario* material was made.

We hold that defendant was deprived of a fair trial by the refusal of the court to permit inquiry on the source of the description in the buy report *(see, People v Martinez,* 71 NY2d 937; *People v Rosario,* 9 NY2d 286, *cert denied* 368 US 866).

Although no application was made for the appropriate sanction of striking the relevant evidence *(see, People v Wallace,* 76 NY2d 953), in light of the dispute concerning defendant's motion for reassignment of counsel, we reach the issue in the interest of justice. Accordingly, we reverse and remand for a new trial. On this record, as in *Wallace,* which involves similar facts, defendant was sufficiently prejudiced by the failure to impose a sanction for the conceded *Rosario* violation, that harmless error analysis is inappropriate. Concur— Murphy, P. J., Rosenberger and Smith, JJ.

Sullivan and Kassal, JJ., dissent in a memorandum by Sullivan, J., as follows: On December 15, 1988, at approximately 7:00 P.M., Police Officer Ponce, the undercover, followed by Detective Anne Peters, his "ghost", as part of a pre-arranged "buy and bust" operation, walked to the corner of Walton Avenue and Cameron Place in the Bronx, where Ponce saw defendant, attired in a long maroon coat, white sneakers and blue jeans. As Ponce approached, defendant asked, "How many?" The officer asked for "two" and, in exchange for $10 of pre-recorded buy money, defendant handed him two red-taped vials.

Defendant and Officer Ponce, who stood face-to-face and two feet apart during the 15-second transaction, were alone on the corner. Nothing obstructed the officer's view; the lighting from the street lamps was good. Officer Ponce noted that defendant, whom he dubbed "J.D. Long Coat", had a beard and mustache. From 30 feet away, Detective Peters observed "an exchange of some kind" between the undercover officer and a male Hispanic wearing a long maroon coat and blue jeans. Nothing obstructed her view. The lighting was good. No one else was present during the transaction.

After returning to his car and signalling Detective Peters that a purchase had been made, Officer Ponce, one minute after the transaction, radioed to his backup team a description of defendant as having a beard and mustache and wearing a long maroon coat, blue jeans and white sneakers. Within a minute or two, a backup officer proceeded to the corner of Cameron Place and Walton Avenue and, as Detective Peters watched, arrested defendant, who was alone on the corner, wearing a long maroon coat and fitting the description. The arresting officer searched defendant at the scene and recovered the pre-recorded $10 buy money from his pocket. No drugs were found on defendant.

After placing the two vials he had purchased in a small envelope, sealing it and writing on the outside of the envelope the location of the purchase and the description of defendant that he had radioed to his backup team, the undercover officer drove by the arrest scene and, from ten feet away, confirmed that defendant was, indeed, the seller. The undercover officer then returned to the precinct. There he removed the two vials from the small envelope and placed them in a large manilla envelope, which both he and his supervisor signed and sealed and he then vouchered. At the precinct, the undercover officer also recorded defendant's description in his official buy report. It is not disputed that Officer Ponce destroyed the envelope on which he had originally noted the seller's description and that the envelope contained *Rosario* material, which was not available at trial.

As the majority concedes, however, defendant failed to request any sanction and any claim that he is entitled to a new trial because of the court's failure to impose a sanction is unpreserved. *(People v Edwards,* 179 AD2d 511; *People v Baez,* 166 AD2d 256, 257, *lv denied* 77 NY2d 875.) Nor should the court reach this issue in its interest of justice jurisdiction. In both cross-examination and later in summation, defense counsel noted the undercover officer's destruction of the small

envelope containing his description of the seller and fully exploited its unavailability on the issue of the undercover's credibility. *(See, e.g., People v Rosado,* 160 AD2d 505, 506, *lv denied* 76 NY2d 864.)* In summation, for instance, he compared the description contained in the official buy report prepared by the undercover officer with defendant's own description of himself as contained in his pedigree statement and called the undercover "a damn liar." Thus, defendant was able to drive home forcefully to the jury his point on the destroyed description.

Moreover, in its charge, the court, with regard to the description of defendant, instructed the jury that it could consider whether the "testimony of the identification witness is supported or not supported by other evidence in the case." Thus, without asking for such a charge, defendant received the benefit of an instruction that allowed the jury to draw an adverse inference from the loss of the envelope containing the seller's description.

Nor is there any merit to the argument, accepted by the majority, that defendant's right of cross-examination was abridged. The record with respect to that claim shows the following during cross-examination of the undercover officer:

"Q. Did you destroy the original document because the information on the document was different from the description of my client when he was arrested?

"A. No.

"Q. Why did you destroy that original document?

"A. All that information on that envelope I transferred to this paper right here, which is the buy report so, therefore, I didn't think I had any need for it, so I threw it out.

"Q. Well, did you record any other information on any other sheets of paper that we don't have available here today?

"A. No.

"Q. Now, you indicated that the person you gave a description of as the person that sold drugs as being five-five?

"A. Approximately five-five, yes.

"Q. Well, isn't it kind of mysterious, Officer, and a hundred and seventy pounds and thirty-three years old, right?

"A. Approximately, yes.

"Q. Wasn't it kind of mysterious, Officer, that that same information is on the arrest report, the information that my client gave the police?

"[Prosecutor]: Objection.

"THE COURT: Sustained.

"Q. How is it, Officer, you guessed exactly my client was thirty-three years old, exactly five-five and weighs exactly a hundred and seventy pounds?

"[Prosecutor]: Objection.

"THE COURT: Sustained.

"Q. Isn't it a fact this information came from the arresting officer, isn't that a fact?

"[Prosecutor]: Objection.

"THE COURT: Sustained as to form.

"Q. Well, you filled this out in the police precinct, correct?

"A. Yes.

"Q. This is after the operation, correct?

"A. Correct.

"Q. And you spoke to the arresting officer in the case, correct?

"A. Yes, I did.

"Q. And did the arresting officer say 'Yeah, well the person I arrested was thirty-three years old' and you write, 'thirty-three years old' in there, right?

"[Prosecutor]: Objection.

"THE COURT: Sustained."

Thus, it can be seen that, in all, objections were sustained to four of defense counsel's questions, all of which, basically, were rhetorical questions of the type often used in cross-examination and the point of which is in the question, not the answer. It could hardly be expected that the undercover officer would answer any of the questions objected to affirmatively or in a way favorable to defendant. After all, he was steadfast in his testimony that although he spoke with the arresting officer at the precinct they did not discuss defendant's description. Furthermore, the arresting officer testified that he had not discussed defendant's pedigree description of himself with anyone. Thus, in each instance, defense counsel's point, i.e., disbelief in the undercover officer's testimony that the description of the seller contained in the buy report was based on his observations of defendant at the time of the sale and not on anything that the arresting officer told him at the precinct, was made by the mere asking of the question. No answer was needed. Nor, realistically, was one favorable to defendant expected. And, as already noted, defense counsel vigorously argued the point in his summation that the description of

defendant as contained in the buy report and, allegedly, as written on the destroyed envelope was precisely the same in all respects as that furnished by defendant himself to the arresting officer. Thus, the court's evidentiary rulings did not in any way hamper defendant's attack on the undercover officer's credibility on the description issue. Moreover, given the nature of the general objection *(see, Tooley v Bacon,* 70 NY 34, 37; Richardson, Evidence § 538 [Prince 10th ed]), these rulings probably can be justified, at least as to the form of the question, in two of the four instances.

Defendant's claim with respect to his allegedly unresolved pre-trial motion for the assignment of new counsel, also relied upon by the majority, is meritless. Defendant had submitted a pre-typed, boilerplate motion seeking the reassignment of counsel. He alleged conflict of interest, lack of confidence and ineffectiveness because the attorney did not visit him at his place of detention and the attorney's failure to advise him of the motions he had filed or of the available defenses and to conduct any investigation necessary to a "proper defense". Defense counsel also moved, returnable the same date, to dismiss the indictment and suppress any statements and physical evidence. In support of the motion, counsel, in pertinent part, affirmed, based on conversations with defendant, that defendant denied any part in the transaction, that "[h]e states" he happened to be in a drug-prone location, did nothing to justify a stop and was mistakenly arrested. The People responded to counsel's motion and stated, *inter alia,* that defendant made no statements. At a subsequent calendar call, the court announced that it denied all branches of counsel's motion, including the request for a *Mapp* hearing, although at a later date, a *Mapp* hearing was, in fact, held. The record reveals no other information concerning the motion for the reassignment of counsel.

From all that appears in this record, defendant's *pro se* motion was abandoned. He proceeded, without any objection as to his legal representation, to a pre-trial hearing and later, a full two months after submission of his motion, to trial. It may well be that defendant and his counsel resolved their differences. In any event, on the record before us, defendant's motion was devoid of merit and counsel throughout represented his client competently.

In light of the lack of merit of defendant's abridgement of his Sixth Amendment rights argument and non-preservation with respect to his claim based on the lack of sanction for the destruction of *Rosario* material, the result reached here by the

majority is particularly inappropriate. This is all the more so given the strength of the People's case, neither the sufficiency nor weight of which is challenged. Not one, but two police officers saw defendant in a drug transaction. One of them, the "ghost", kept defendant under constant observation until his arrest. Defendant, garbed in a distinctive long maroon coat, was the only person on the scene. He had a beard and mustache and wore blue jeans and sneakers, as described. He was found to be in possession of the pre-recorded $10 buy money. His challenge to the undercover officer's credibility, based on the destruction of the original envelope containing defendant's description and the description contained in the buy report, was vigorously pressed before the jury, which obviously found it unpersuasive.

Since I find no justification in this record for a reversal, either in law or in the interest of justice, I would affirm the conviction.