OPINION OF THE COURT
Donald J. Corbett, Jr., J.
On June 22, 1973, by indictment number 371, claimant Betty *708 Tyson was indicted by a Monroe County Grand Jury on five counts relating to incidents occurring on May 25, 1973, and on two additional counts relating to events occurring on May 27, 1973. She was convicted on December 28, 1973, and sentenced on February 13, 1974.[1] Thereafter, claimant brought a motion to vacate her conviction under CPL 440.10. On May 21, 1998, Judge John Connell of the Monroe County Court, with the concurrence of the District Attorney’s Office, granted the motion of Betty Tyson to vacate the judgment of conviction entered on February 13, 1974. Claimant was thereafter released from the custody of the New York State Department of Correctional Services after having served some 25 years in State prison.
Claimant now brings this claim (as amended) against the State of New York pursuant to section 8-b of the Court of Claims Act (the Unjust Conviction and Imprisonment Act of 1984). The defendant, in lieu of an answer, brings this motion to dismiss the claim on three grounds, to wit: (1) claimant’s conviction was not dismissed on a statutorily enumerated ground; (2) claimant cannot prove that she did not commit the crime of reckless endangerment as charged in the seventh count of the indictment; and (3) because the claim does not satisfy the requirements of the statute, the court need not reach the issue of claimant’s guilt or innocence.
This motion raises novel issues not directly addressed previously by appellate authority, and I start with a detailed examination of the Unjust Conviction and Imprisonment Act of 1984 by examining the Bill Jacket as well as the statute as enacted.
HISTORY
In the 1983 legislative session, the New York State Legislature passed several private bills which would have conferred jurisdiction on the Court of Claims to hear, audit and determine *709 claims of individuals who alleged that they had been wrongfully convicted and imprisoned in New York State. At that time, it was the only manner of redress that such persons had in seeking damages against the State, to wit, a request to the Legislature to pass a private bill which then enabled the Court of Claims to exercise jurisdiction thereunder. Recognizing that this was an ad hoc approach to what was becoming a recurrent issue, Governor Cuomo vetoed the bills,[2] but requested that “the Law Revision Commission [Commission], working with the Attorney General, undertake a study of the unresolved considerations and issues raised by the bills.”[3]
The Law Revision Commission completed its study and issued its Report of the Law Revision Commission to the Governor on Redress for Innocent Persons Unjustly Convicted and Subsequently Imprisoned (Report to Governor) on February 2, 1984. It found that “Recourse to private legislation is an inadequate remedy for one who has been unjustly convicted,” and that continuing the ad hoc approach could “create an appearance of impropriety and undermine the integrity of the legislative process.”[4] It recommended the legislative creation of a new statutory claim against the State which would establish “a uniform policy on the part of the State towards the unjustly convicted ”[5] It then included proposed legislation, “a bill containing proposed statutory changes to implement its recommendations ”[6]
This proposal was based upon the concept that “such a claim, drafted with appropriate safeguards, should not unduly interfere with the working of a District Attorney’s office and does not require disturbing the carefully crafted compromise presently inherent in the torts of malicious prosecution and false imprisonment. Furthermore, as it will utilize an already existing judicial system, *710 it should be relatively inexpensive to implement.”'[7] It is interesting to note that this report then stated, “However, the vast majority of unjust convictions have occurred through no fault of the District Attorney (see discussion supra at pp 2-3)”[8]
The Commission then found that: “a mere claim of innocence should not suffice as a basis for asserting the proposed claim. Rather, the Commission believes that there must be present ‘something more’ which would justify the Court of Claims hearing the claim. In its opinion, this ‘something more’ would be compliance by the person bringing suit with certain specified requirements. These requirements, discussed infra, are not so narrow so as to bar one who has a meritorious case from the courts, yet not so broad so as to permit a person to pursue a frivolous claim.”[9] Having stated that there must be “certain specified requirements” in a claim, the Commission’s proposed bill included only two: “(a) [that] he did not commit any of the acts charged in the accusatory instrument or his acts or omissions charged in the accusatory instrument did not constitute a felony or misdemeanor against the state, and (b) [that] he did not by his own conduct cause or bring about his conviction.”[10]
Hence, the Commission’s draft bill envisioned a claim which would state two facts in sufficient detail, to wit, that the claimant did not commit the acts and did not cause or bring about his conviction. This exact language of the Commission’s proposed bill was submitted to the Legislature as a Governor’s Program Bill of 1984 (No. 211) and was introduced in the Senate by Senator Barclay (at the request of the Governor) as S 9651 on May 17, 1984.
ANALYSIS
During the course of its 1984 session, the Legislature committed the bill to the Committee on the Judiciary, amended the original program bill and produced S 9651-B and A 11053-B. The Senate and Assembly passed the amended version, sent it to the Governor, who approved it on December 21, 1984 with Approval Memorandum No. 140, and the amended bill became law as chapter 1009 of the Laws of 1984.
*711 The new statute articulated detailed requirements for the filing of a claim, inter alla, that the judgment of conviction be reversed and vacated, and the accusatory instrument dismissed, as pertinent here, on any of the following grounds: paragraphs (a), (b), (c), (e) or (g) of subdivision (1) of CPL 440.10 (Court of Claims Act § 8-b [5] [b] [ii]).
Accordingly, for purposes of this decision, I must first examine CPL 440.10 (1). CPL 440.10 (1) recites that the court may vacate a judgment upon the ground that:

“(a) The court did not have jurisdiction of the action or of the person of the defendant; or

11 (b) The judgment was procured by duress, misrepresentation or fraud on the part of the court or a prosecutor or a person acting for or in behalf of a court or a prosecutor; or

“(c) Material evidence adduced at a trial resulting in the judgment was false and was, prior to the entry of the judgment, known by the prosecutor or by the court to be false; or * * *
“(e) During the proceedings resulting in the judgment, the defendant, by reason of mental disease or defect, was incapable of understanding or participating in such proceedings; or * * *
“(g) New evidence has been discovered since the entry of a judgment based upon a verdict of guilty after trial, which could not have been produced by the defendant at the trial even with due diligence on his part and which is of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant; provided that a motion based upon such ground must be made with due diligence after the discovery of such alleged new evidence.” (Emphasis supplied.)
The Legislature specifically excluded those judgments vacated pursuant to CPL 440.10 (1) (d), (f) and (h), to wit, on the grounds that:
“(d) Material evidence adduced by the people at a trial resulting in the judgment was procured in violation of the defendant’s rights under the constitution of this state or of the United States; or * * *
“(f) Improper and prejudicial conduct not appearing in the record occurred during a trial resulting in the judgment which conduct, if it had appeared in the rec *712 ord, would have required a reversal of the judgment upon an appeal therefrom; or * * *
“(h) The judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States.” (Emphasis supplied.)
The legislative amendments that were eventually enacted into law were not technical or complex in nature, but were very specific in limiting claims to certain specified grounds while excluding other, equally specific grounds. The amendments of the Commission’s original proposed bill by the Legislature were obvious, recognized and not equivocal. The Division of the Budget in its recommendation in support of the legislation dated December 14, 1984 noted that the bill “creat[ed] formal and specific procedures for adjudicating these cases.” (10-Day Bill Budget Report on Bills, Bill Jacket, L 1984, ch 1009 [emphasis supplied].) Attorney General Robert Abrams, in his Memorandum for the Governor dated December 17, 1984 recommending enactment of the statute, noted that “certain specified grounds” and “certain revisions have been made to the Commission’s proposal.” (Mem of Atty Gen, Bill Jacket, L 1984, ch 1009 [emphasis supplied].) Finally, the Governor acknowledged as much in his Approval Memorandum of December 21, 1984: “The bill establishes detailed requirements for the filing of a claim” (1984 McKinney’s Session Laws of NY, at 3669 [emphasis supplied]).
It is abundantly clear that the Legislature, in drafting and enacting this statute, specifically added a series of qualifying provisions before one could commence an action against the State for unjust conviction and subsequent imprisonment which include CPL 440.10 (1) (a), (b), (c), (e) and (g). The exclusion of paragraphs (d), (f) and (h) reflects an obvious legislative intent.
The question now to be determined is upon which paragraph or paragraphs of CPL 440.10 (1) did the County Court rely in the vacatur of the claimant’s conviction.
COUNTY court’s DECISION
Judge Connell’s decision of May 21, 1998 did not state which specific paragraph of CPL 440.10 (1) he relied upon in vacating the conviction. However, the entire thrust of Betty Tyson’s postjudgment motion to vacate her conviction concerned the failure of the prosecution to turn over specifically requested exculpatory Brady material (Brady v Maryland, 373 US 83) or Rosario material (People v Rosario, 9 NY2d 286), to wit, an *713 undated police report, which the District Attorney conceded contained Rosario material. Judge Connell’s opinion is very instructive with respect to his findings concerning the necessity of the exculpatory material as he carefully utilized and highlighted a term of art, “reasonable possibility,” in two instances when discussing the Rosario test for relief in a CPL 440.10 (1) motion.
The Federal standard as defined in United States v Bagley (473 US 667) is that the failure to disclose favorable evidence is “ ‘constitutional error * * * only if the evidence [was] material in the sense that * * * there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.’”[11] However, the New York State Court of Appeals specifically declined to adopt the Bagley standard, noting: “From a Federal standard of ‘seldom, if ever, excusable,’ it appears that the prosecution’s failure to turn over specifically requested evidence, under Bagley, will now seldom, if ever, be unexcused.”[12] The Court of Appeals “decline [d] to abandon these accepted principles in order to conform to the lesser protections of Bagley.”[13] Judge Kaye then continued to explain why the Court decided to adopt the “reasonable possibility” standard which it characterized as “seldom, if ever, excusable.”
Applying this analysis, Judge Connell found of particular importance: “an undated supplemental Police Report authored by Det. Mahoney and Det. Brunette. The report was provided to the defendant [Tyson] by the People in response to the instant motion. The People concede that this document was not provided to the defendant’s trial counsel. The People also maintain that it was not provided to them by the Rochester Police Department either. The District Attorney concedes that the report contains Rosario and Brady impeachment material with respect to Jon Jackson.”[14]
Judge Connell then concluded that:
“Had defense counsel obtained the synopsis of the witness’s oral statement that such observation had not been made, it would have provided such fertile ground for cross examination that there would have existed a ‘reasonable possibility’ that the verdict would have been one other than guilty.
*714 “Based on this Rosario and Brady violation, it is unnecessary to reach the defendant’s other claims.”[15]
Hence, there is great significance in Judge Connell’s clearly intentional choice of language in his decision. While he did not enumerate by chapter and verse the specific paragraph upon which he ruled, he indelibly and unequivocally left no doubt about his reasoning. He based his vacatur solely on the lesser standard of CPL 440.10 (1) (f), a ground that the Legislature refused to incorporate or enumerate in the proviso clause of section 8-b of the Court of Claims Act. Judge Connell’s decision was not based on “innocence” or on a violation of the New York State or the United States Constitution, as contained in paragraph (h) of CPL 440.10 (1).
Claimant argues that “[F]inally, there are cases, like this one, where the evidence in support of defendant’s (Tyson) motion to vacate her conviction falls under both CPL Section 440.10(l)(f) and CPL Section 440.10(l)(g).”[16] I do not find that the vacatur decision was based on CPL 440.10 (1) (g), which is based upon a finding of “newly discovered” evidence. This vacatur was based upon the withholding of Rosario/Brady material; nothing more, nothing less.
In conclusion I find the grounds for the County Court’s decision to have been narrowly granted, solely on the basis of CPL 440.10 (1) (f). Since this is a nonenumerated ground in the proviso clause of section 8-b of the Court of Claims Act, and since the Legislature so clearly intended to exclude such claims from the umbrella of the Unjust Conviction and Imprisonment Act of 1984, I grant the motion of the defendant and dismiss the claim.
If I had to reach a decision on defendant’s second point concerning the reckless endangerment count of the indictment, I would decline to dismiss. That count was an additional count which concerned Tyson’s actions against a police officer on a different day and under a different set of circumstances which did not directly flow from the murder.
That being said, I would be remiss in failing to recognize that my ruling here precludes reaching what many believe to be the essence of this statute, the question of innocence, the burden of proof for which the Legislature has placed upon a claimant, requiring the highest standard of proof in a civil *715 proceeding, that of clear and convincing evidence. In a matter which has garnered great public scrutiny, Betty Tyson has served some 25 years in State correctional facilities for a criminal conviction that is now vacated. However, the Legislature, in its wisdom, has placed a high threshold upon those seeking recompense under this statute, and unfortunately for Betty Tyson, her claim cannot surmount that limitation. And note that this is a threshold, not a roadblock, because the remedy for which recompense is sought here is a statutory creation, not a common-law right, and thus I am bound by the Legislature’s draftsmanship. So, unfortunately for Betty Tyson, there can be no recovery here, and no opportunity for her to prove her innocence, perhaps her ultimate goal.
Regardless of whether this decision survives appellate scrutiny, the Legislature may wish to revisit this “structurally complicated statute.”[17] Nonetheless, despite my understanding that Betty Tyson spent 25 years in correctional facilities upon a conviction that has been vacated, I am obliged to grant the motion and dismiss the claim.

.
Indictment Conviction Sentence
Murder — intentional Murder, 2nd degree 25-life
Murder — felony Manslaughter, 1st degree indeterminate-25
Robbery, 1st degree — with serious injury Robbery, 1st degree indetermin'ate-25
Robbery, 1st degree — with dangerous instrument Robbery, 1st degree indeterminate-25
Grand Larceny, 3rd degree Grand Larceny, 3rd degree indeterminate-4
Assault, 1st degree auto vs Officer Grande, May 27, 1973
Reckless Endangerment vs Grande, May 27, 1973 Reckless Endangerment, 1st degree indeterminate-7

. See, Veto Mem Nos. 61 and 62 of 1983, reprinted in 1984 Report of NY Law Rev Commn, reprinted in 1984 McKinney’s Session Laws of NY, at 2876-2877.

. Veto Mem Nos. 61 and 62 of 1983, reprinted in 1984 Report of NY Law Rev Commn, reprinted in 1984 McKinney’s Session Laws of NY, at 2877 (emphasis supplied).

. Report to Governor, Appendix to 1984 Report of NY Law Rev Commn, reprinted in 1984 McKinney’s Session Laws of NY, at 2915 (emphasis supplied).

. Report to Governor, op. cit., at 2917 (emphasis supplied).

. February 2, 1984, Report to Governor transmittal letter from Carolyn Gentile, Chairwoman, Appendix to 1984 Report of NY Law Rev Commn, reprinted in 1984 McKinney’s Session Laws of NY, at 2900 (emphasis supplied).

. Report to Governor, op. cit., at 2917-2918 (emphasis supplied).

. Report to Governor, op. cit., at 2923 (emphasis supplied).

. Report to Governor, op. cit., at 2927-2928 (emphasis supplied).

. Report to Governor, op. cit., at 2936.

. See, People v Vilardi, 76 NY2d 67, 72 (Kaye, J.).

. People v Vilardi, 76 NY2d 67, 75, supra.

. People v Vilardi, 76 NY2d 67, 77, supra.

. People v Tyson, Monroe County Ct, May 21, 1998, Connell, J., slip op, at 2-3.

. People v Tyson, Monroe County Ct, May 21, 1998, Connell, J., slip op, at 4, supra.

. Claimant’s supplemental memorandum of law, June 15, 1999, at 2.

. Ivey v State of New York, 80 NY2d 474, 480.