■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL McDONALD, Appellant. [732 NYS2d 32] —Appeal by the defendant from a judgment of the County Court, Nassau County (Orenstein, J., at trial; Wexner, J., at sentence), rendered February 24, 2000, convicting him of criminal mischief in the second degree, criminal mischief in the fourth degree, criminal impersonation in the second degree, resisting arrest, and criminal contempt in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The defendant was employed by a plumbing subcontractor on a construction job in Newark, New Jersey. On the fourth day of his employment, October 30, 1998, the defendant was moved to another job due to complaints of harassment by a female employee. Four days later, on November 3, 1998, the defendant threatened the general contractor, Floyd Gelder, claimed Gelder had ruined his reputation, and owed him $50,000. The defendant had to be restrained from assaulting Gelder, and threatened to go to Gelder's home and harm him. The defendant was arrested by Newark police.

A few days later, after Gelder left for a previously-scheduled

vacation, residents of Gelder's apartment building in Nassau County observed a man in a white flatbed truck outside the building. Shortly after midnight on November 9, 1998, residents heard a noise outside and saw a man throwing rocks against the building and breaking the windows of Gelder's apartment. The man drove off in a white flatbed truck. A jeep parked in a parking lot adjacent to the building was found to have extensive damage, including broken lights and windows, hammered dents in the body, and flat tires. The jeep did not belong to Gelder; however, it was in a parking space labeled "6-2" which, due to stenciling, appeared as "G-2," the number of Gelder's apartment. The nameplate for Gelder's apartment in the vestibule of the apartment building had been removed and the slot for the name smeared with blood. DNA analysis indicated that the blood found on the nameplate was a statistical match with the defendant's blood. At approximately 4:00 A.M. that morning, the jeep was set on fire. The defendant was stopped by police as he drove past the scene and said he was looking for a resident of the building named "Floyd" who owed him money. The defendant struggled with police, and, showing a fake shield, falsely claimed to be a New York City police officer. Following the issuance of an order of protection ordering the defendant to stay away from Gelder's home, the defendant was seen on videotape in the vestibule of Gelder's apartment building.

The trial court's circumstantial evidence charge adequately conveyed to the jury the principle that the circumstantial evidence had to exclude beyond a reasonable doubt every hypothesis of innocence (*see, People v Rojas,* 240 AD2d 439; *People v Rodriguez,* 232 AD2d 662). In any event, the case rested partly on direct evidence and the defendant was not entitled to a full circumstantial evidence charge (*see, People v Chillino,* 186 AD2d 260, 262). In addition, the trial court properly instructed the jury to evaluate the evidence, including the ability of each witness to observe the defendant and to remember his characteristics (*see, People v Knight,* 87 NY2d 873; *People v Rivera,* 259 AD2d 637).

The trial court properly denied the defendant's request for an adverse inference charge based on the People's alleged failure to preserve a photo array shown to witnesses from which no correct identification was made. Failure to produce the photo array was not a *Rosario (see, People v Rosario,* 9 NY2d 286, *cert denied* 368 US 866) or *Brady (see, Brady v Maryland,* 373 US 83) violation and the array itself was not a statement for *Rosario* purposes (*see, People v Sydnor,* 254 AD2d 508; *People v*

*Brock,* 246 AD2d 406; *People v Quinones,* 228 AD2d 796, 797-798; *People v Ramirez,* 224 AD2d 455, 456).

The defendant was not prejudiced by the late discovery of police radio transmissions relating to the investigation of the crimes, since he was given the same opportunity to cross-examine the witnesses who made the prior statements as he would have had they been discovered earlier (*see, People v Gutierrez,* 273 AD2d 251; *People v Quinones, supra,* at 798).

Viewing the evidence adduced at trial in the light most favorable to the People (*see, People v Contes,* 60 NY2d 620), we find that the evidence of the defendant's threats to Gelder together with the damage done to Gelder's apartment and the car thought to be Gelder's was legally sufficient to support the convictions of criminal mischief in the second degree (*see, People v Chillino, supra,* at 261) and criminal mischief in the fourth degree (*see, People v McDowell,* 255 AD2d 976; *People v Summer,* 64 AD2d 658). Additionally, the evidence sufficiently established that the defendant resisted arrest (*see, People v Clark,* 241 AD2d 710), and the conviction of criminal contempt in the second degree was established by the defendant's violation of the order of protection ordering him to stay away from Gelder's home (*cf., People v Gunatilaka,* 156 Misc 2d 958).

Upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence (*see,* CPL 470.15 [5]).

The sentence imposed was not excessive (*see, People v Delgado,* 80 NY2d 780; *People v Suitte,* 90 AD2d 80). Bracken, P. J., Luciano, Feuerstein and Adams, JJ., concur.