[597 NYS2d 305]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GREGORY JARRELLS, Appellant.

First Department, May 4, 1993

**APPEARANCES OF COUNSEL**

*Malvina Nathanson* for appellant.

*James J. Troy* of counsel, New York City *(Norman Barclay* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

**OPINION OF THE COURT**

Ross, J.

On this appeal we are called on to decide whether the belated production of *Rosario* material combined with the improper cross-examination of the defendant effectively denied this defendant a fair trial. Since the main issue in this short trial was credibility, we conclude that the two errors denied this defendant a fair trial and accordingly reverse the conviction and remand the matter for a new trial.

The defendant was convicted of robbing a take-out Chinese restaurant located at 2077 Seventh Avenue. According to the People's witnesses, the defendant's accomplice, Anthony Palmer, entered the Capital Restaurant on November 29, 1990 at about 9:30 P.M. and ordered a container of soup from Ms. Cheng. After being given the soup by Ms. Cheng, Palmer dropped it on the floor. When Ms. Cheng came out from behind the counter to clean the floor, the defendant entered

the restaurant. Both men produced guns, announced a robbery and forced Ms. Cheng and the chef back into a storeroom at the rear of the restaurant where Ms. Cheng's husband, Mr. Cheng, had been sleeping. There was a telephone in the storeroom, consequently Mr. Cheng was able to call the police. Officers arrived within minutes of the call and arrested the defendant and his accomplice as they emerged from the rear of the store.

Palmer was found in possession of an unloaded handgun. A .38 caliber revolver loaded with six bullets was recovered from the defendant's jacket pocket. A cup filled with money and a radio, which the Chengs identified as items taken from the store, were also recovered from the defendant. The Chengs claimed that $600 was taken from the store. They also identified several items taken from Palmer as their property. At trial Ms. Cheng positively identified the defendant as one of the robbers. Mr. Cheng stated that defendant looked like one of the robbers. Anthony Palmer pleaded guilty to two counts of robbery in the first degree and was sentenced to concurrent terms of 3 to 9 years in prison.

The defendant testified on his own behalf stating essentially that he was a patron and not involved in the robbery. Defendant stated that at time of the robbery he was 26 years old, lived with his aunt in the Bronx and was employed as a security guard. According to the defendant, he was shopping in the neighborhood for shoes when he decided to have some Chinese food. He placed an order and left the restaurant. When he returned about five minutes later, he saw that the door separating the kitchen from the front area of the restaurant was open and heard noises coming from the rear. Defendant stated that while he continued waiting for his food order, police officers entered the store and put him up against the wall. Defendant stated that he possessed $140 which his aunt had given him. He denied possessing a handgun or any of the stolen property at the time of his arrest. Defendant also denied knowing Anthony Palmer.

Clearly, the testimony of the People's witnesses, if credited, would constitute sufficient evidence to convict the defendant in this case. Therefore, the defendant's only effective defense was his testimony that he was merely a bystander caught up in the robbery and mistakenly identified by the victims as Palmer's accomplice. Consequently, any evidence introduced by the prosecutor that would undermine defendant's credibility would thereby undermine the defendant's

defense. The improper admission of such evidence is what requires the reversal here.

The prosecutor admittedly failed to turn over to the defense a voucher prepared by the arresting officer, which contained a list of the items taken from the defendant upon his arrest. As a result defense counsel, during cross-examination of the officer who arrested the defendant, Officer Sanes, elicited from the officer that while any money recovered from the defendant would have been vouchered, he did not have a voucher in court which showed that money was found on the defendant. Following this cross-examination, the prosecutor established upon redirect examination of Officer Sanes, that the money recovered from the defendant was in fact vouchered but that the voucher was missing. Officer Sanes' partner, Officer Brown, corroborated Officer Sanes' testimony concerning the recovery and vouchering of the money found on the defendant during his direct examination. However, Officer Brown also stated that he did not have the document in court.

Defense counsel moved for a mistrial contending that if he had been provided with the missing *Rosario* material his cross-examination of the People's witnesses would have been entirely different. The court denied the motion and the prosecutor promised to make the document available to the defense counsel and to provide defense counsel with an opportunity for additional cross-examination. The voucher, which showed that over $420 in bills and coins was found on the defendant, was produced and admitted into evidence.

Part of the defense strategy was to attempt to show that perhaps Ms. Cheng was mistaken in her testimony, since she claimed that $600 was taken from the restaurant yet there was nothing which documented that the stolen money was found on the defendant. The failure to timely disclose the existence of the voucher was unquestionably a violation of the *Rosario* rule *(People v Rosario,* 9 NY2d 286, *cert denied* 368 US 866). Its introduction in this case after the defense pursued a strategy which relied upon its absence was extremely prejudicial. The purpose of timely disclosure of such material is to avoid the type of surprise to the defense that occurred here *(People v Goins,* 73 NY2d 989, 991; *People v Thompson,* 71 NY2d 918; *People v Perez,* 65 NY2d 154, 159).

The belated production of the voucher after defense counsel's cross-examination of the police officers effectively trapped defense counsel in an untenable position. Any opportunity

defense counsel may then have been provided with, to cross-examine the officers about the voucher, did not lessen the error's effect of undermining the defendant's testimony and corroborating that of the People's witnesses. Defense counsel could not explore the matter deeply on cross-examination, as such a course would have drawn greater attention to the voucher and further prejudiced his client.

■ During the prosecutor's cross-examination of the defendant, the prosecutor impermissibly attempted to impeach the defendant's testimony, by introducing into evidence statements, made by defendant's accomplice during his plea allocution, which contradicted the defendant's testimony. The accomplice, Anthony Palmer, did not testify at trial. The objectionable questioning is as follows:

"PROS.: Now it is your story that you never saw that other guy before you went into the restaurant that night?

"DEF.: Yes.

"PROS.: And it is your story that you never seen [sic] People's Exhibit 8, this gun, before that night?

"DEF.: Yes.

"PROS.: Have you spoken to Mr. Palmer since this incident occurred?

"DEF.: Yes.

"PROS.: When?

"DEF.: I can't recall. When I got arrested the same night.

"PROS.: Okay. Since the night you were arrested, since that night, have you spoken to him?

"DEF.: Yes.

"PROS.: You have spoken to him about this case?

"DEF.: Yes.

"PROS.: What has he told you?

"DEF.: I asked him, I asked him why did he, why didn't he tell the police I didn't have nothing to do with that. He said 'Man, I was scared. I didn't have nothing to say. I came out and seen you on the wall', you know.

"PROS.: So then would it surprise you to find out—withdrawn. Your honor, may we approach?

"THE COURT: It's not necessary.

"PROS.: Would it surprise you to find out that he admitted under oath—

"DEFENSE COUNSEL: Objection.

"THE COURT: Overruled.

"PROS.:—on February 18, 1991, that he committed this robbery and that he knew you were the man with the loaded gun?

"DEF.: I don't believe he said that because he told me, he told me it's a fake, he was going to tell him I didn't have nothing to do with that. He don't even know me and he don't even know what I was doing in the restaurant.

"DEFENSE COUNSEL: Your Honor, I am going to object to this whole line of testimony.

"THE COURT: Overruled.

"DEFENSE COUNSEL: May we approach the bench?

"THE COURT: No, I overruled the objection.

"PROS.: So according to you, if Mr. Palmer admitted under oath that he and you committed this robbery together and he knew you—

"DEFENSE COUNSEL: Objection, Your Honor. There is no such testimony.

"THE COURT: Overruled. Go ahead finish.

"PROS.: Let me rephrase the question Mr. Jarrells, it is your story you never saw Mr. Palmer before that night?

"DEF.: Yes.

"PROS.: So you are saying that if Mr. Palmer admitted under oath that he committed that robbery, and that he committed it acting together with you, it would be not true?

"DEF.: Yes.

"DEFENSE COUNSEL: Again I would renew my objection Your Honor.

"THE COURT: Overruled."

The specific questions asked by the prosecutor, in which he attributed to the accomplice statements naming defendant as his cohort and stating that it was defendant who possessed a loaded weapon, were admitted erroneously. The specific portions of the hearsay statements in which the defendant was named as an accomplice and as the possessor of the loaded gun did not constitute admissions against Palmer's penal interest. This questioning circumvented the rule prohibiting the admission of a nontestifying codefendant's confession into evidence enunciated in *Bruton v United States* (391 US 123; *see, People v Manuel,* 182 AD2d 711, 712, *lv denied* 80 NY2d 834). Moreover it otherwise violated the rules of evidence

concerning the impeachment of a witness through the testimony of a nontestifying individual (see, People v Crothers, 160 AD2d 952). Furthermore, it is improper for a prosecutor to compel the defendant to characterize the People's witnesses as liars (People v Jones, 74 AD2d 854; see, People v Butler, 185 AD2d 141). Here, the technique utilized by the prosecutor with respect to a nontestifying witness, whose statements were improperly admitted in the first place, had the same practical effect and served only to compound the error of introducing the statements.

The People argue that the error committed on the cross-examination of the defendant was harmless and that the Rosario error was not overly prejudicial. However, even if we were to find that each of these errors taken alone might not warrant a new trial—a finding we are not prepared to make in this case—the cumulative effect of these particular errors in this short trial mandates reversal (People v Dowdell, 88 AD2d 239; People v Butler, supra).

People v Forrest (163 AD2d 213) is distinguishable and does not compel a different result. In that case there was overwhelming evidence of the defendant's guilt; three eyewitnesses who saw the incident testified. In addition, the Rosario material involved in Forrest (supra) was not substantially different from other material which had been timely turned over to the defense. Consequently, this Court concluded that defense counsel in Forrest (supra) was not required to alter his strategy upon its belated introduction. In this case timely production of the voucher would have totally altered defense counsel's cross-examination of the police officers who testified. Lastly, in Forrest (supra), the introduction of the codefendant's statement was considered to be harmless error. In this case the prosecutor's recapitulation of Anthony's Palmer's inculpatory statement made during his plea allocution was extremely prejudicial under these circumstances.

We have reviewed the defendant's argument concerning the trial court's purported refusal to grant an adjournment and find it to be without merit.

Accordingly, the judgment of Supreme Court, New York County (James Leff, J.), rendered April 24, 1991, convicting the defendant, after a jury trial, of two counts of robbery in the first degree, two counts of robbery in the second degree and one count each of criminal possession of a weapon in the second and third degrees, and sentencing him, as a second

violent felony offender, to concurrent terms of 10 to 20 years on the first degree robbery convictions, 7½ to 15 years on the second degree robbery and weapon possession convictions and 3½ to 7 years on the third degree weapon possession conviction is reversed, on the law, and the matter is remanded for a new trial.

KUPFERMAN, J. (dissenting). I would affirm for the reasons stated in *People v Forrest* (163 AD2d 213, *affd* 78 NY2d 886, *for reasons stated below).*

The two issues posed by the majority as warranting reversal were considered and rejected by this Court in the *Forrest* case *(supra).*

MILONAS, J. P., and ROSENBERGER J., concur with ROSS, J.; KUPFERMAN, J., dissents in a separate opinion.

Judgment of Supreme Court, New York County, rendered April 24, 1991 convicting the defendant, after a jury trial, of two counts of robbery in the first degree, two counts of robbery in the second degree and one count each of criminal possession of a weapon in the second and third degrees, and sentencing him, as a second violent felony offender, to concurrent terms of 10 to 20 years on the first degree robbery convictions, 7½ to 15 years on the second degree robbery and weapon possession convictions and 3½ to 7 years on the third degree weapon possession conviction is reversed, on the law, and the matter is remanded for a new trial.