■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ABDOLHOSEIN BAGHAI-KERMANI, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ABDOLHOSEIN BAGHAI-KERMANI, Respondent. [605 NYS2d 19] —Order, Supreme Court, New York County (Stephen G. Crane, J.), entered on or about February 26, 1993, which granted defendant's CPL 440.10 to set aside his conviction, after a bench trial, of ten counts of criminal sale of a prescription for a controlled substance (Penal Law § 220.65), unanimously modified, on the law, to reinstate the defendant's conviction on counts one, two, and four through nine, and otherwise affirmed. Order of the same court and Justice, entered on or about March 17, 1993, which denied defendant's CPL 440.10 motion to set aside his conviction on jurisdictional grounds, unanimously affirmed. Defen-

dant is directed to surrender to commence service of his sentence on those counts as to which his conviction is reinstated, and the matter is remitted to the Supreme Court for retrial on counts ten and eleven of the indictment.

The defendant was convicted after a bench trial, at which he represented himself, of ten counts of criminal sale of a prescription for a controlled substance (Penal Law § 220.65), and he was sentenced to concurrent indeterminate terms of imprisonment not to exceed five years on each count and fines totalling $100,000. Several months after sentencing defendant brought two motions pursuant to CPL 440.10 to set aside the judgment on jurisdictional grounds, and on grounds that the People improperly withheld from the defense material that should have been turned over pursuant to *People v Rosario* (9 NY2d 286, *cert denied* 368 US 866) and *Brady v Maryland* (373 US 83). By orders dated February 26 and March 17, 1993 respectively, the trial court granted the defendant's motion to vacate his conviction for failure to turn over *Rosario* material (from which the People appeal), and denied defendant's motion to vacate his conviction on jurisdictional grounds (from which the defendant appeals).

As pertinent to the jurisdictional issue, Executive Law § 63 (3) provides that the Attorney-General shall: "[u]pon request of the governor * * * or the head of any * * * department, authority, division or agency of the state, investigate the alleged commission of any indictable offense or offenses in violation of the law which the officer making the request is especially required to execute or in relation to any matters connected with such department, and to prosecute the person or persons believed to have committed the same and any crime or offense arising out of such investigation or prosecution or both, including but not limited to appearing before and presenting all such matters to a grand jury."

On April 27, 1978 the Commissioner of the New York State Department of Health wrote to the Attorney-General: "Pursuant to Section 63 (3) of the Executive Law, I hereby request that your office investigate the alleged commission of any indictable offense or offenses in violation of the Public Health Law or any other law in relation to any matters connected with the provision of medical assistance for needy persons under the state plan for medical assistance referred to in Section 363-a of the Social Services Law, and to prosecute the person or persons believed to have committed the same or any crime or offense arising out of your investigation or prosecu-

tion or both, including but not limited to appearing before and presenting all such matters to a grand jury."

On that same date the Commissioner of the Department of Social Services wrote an almost identical letter to the Attorney-General with respect to violations of the Social Services Law. The Attorney-General delegated this authority to the Deputy Attorney-General for Medicaid Fraud Control.

Defendant argued below and on appeal that the language of the letters reveals that the Commissioners of Health and Social Services intended to limit their Executive Law § 63 (3) requests to the investigation and prosecution of Medicaid providers and their accomplices, co-conspirators or agents, and points out that in early 1988 he was denied re-enrollment as a Medicaid provider. However, the evidence at trial was that defendant had an ongoing practice of selling prescriptions for controlled substances to persons whom he believed to be registered as Medicaid recipients (each "patient" was required to produce a Medicaid card), and while defendant was precluded from billing Medicaid for his own services during the time period covered by the indictment (November 1989 through April 1991), the system continued to pay out millions of dollars for the drugs he prescribed to Medicaid recipients, while he routinely charged approximately $80 for each prescription issued by him without the exercise of any medical judgment.

We note in this regard that the Department of Social Services is not solely concerned with payments made directly to miscreant providers, but may also seek repayment for improperly ordered services or supplies "from the person ordering or prescribing them even though payment was made to another person." (18 NYCRR 518.3 [b].) Clearly, the crimes for which the defendant was indicted were "in relation to any matters connected with the provision of [Medicaid]" as set forth in the April 27, 1978 letters, as well as constituting violations of the Public Health Law (see, People v Lipton, 54 NY2d 340, 347-348). Executive Law § 63 (3) bestows upon the Attorney-General "the broadest of powers," and it will not be construed strictly, but rather in " 'a sense to accomplish the purpose intended' " (Matter of Mann Judd Landau v Hynes, 49 NY2d 128, 135). Since the April 27, 1978 letters tracked the statute precisely, they should be accorded the same broad construction. We therefore conclude, as did the trial court, that the Attorney-General had jurisdiction to investigate the defendant and to prosecute the indictment filed against him.

With respect to the People's appeal from the trial court's

order dated February 26, 1993, which set aside the defendant's conviction on all ten counts of the indictment remaining after count three was dismissed prior to trial, we hold that the order should be modified to reinstate the convictions on counts one, two, and four through nine. Counts ten and eleven charged sales of prescriptions for controlled substances on March 12 and May 22, 1990 to undercover investigator Kenneth Karp. After sentencing, defendant learned that Karp had made recordings of his comments made in the course of another investigation of a different doctor (Dr. McGuire) on March 19 and May 11, 1990. In the March 19 recording Karp stated to Dr. McGuire's assistant that Dr. Kermani's "worker wasn't there last time either * * * place is crazy." Both parties agree that "last time" referred to March 12, 1990, count ten of the indictment.

Karp had testified at trial with respect to the transaction on March 12, 1990 that when he arrived at the defendant's office at 8:30 A.M. he observed a male "secretary type person right inside the front door" who asked Karp what drug he wanted, and when Karp replied "Ativan," told Karp that would be $80, which Karp gave to the secretary. The secretary put the money and a Medicaid card in the name of David Kaye into an envelope, wrote "Ativan" on the envelope, and filled out the patient's side of a triplicate prescription form.

Defendant is correct in arguing that the March 19 recording could have been used to cross examine Karp on his assertion that a secretary was on duty on March 12, and that if Karp had been impeached with respect to the March 12 transaction, that might have affected the court's evaluation, as the trier of fact, of Karp's testimony respecting the May 22, 1990 transaction (count eleven) as well. It does not follow, however, that any *Rosario* taint of the two counts based upon Karp's testimony should be held to spill over to the eight other counts based on transactions on different dates to other undercover shoppers *(see, People v Watt,* 179 AD2d 697, 699 *[see also,* at 702 (Miller, J., concurring in part and dissenting in part)], *revd on other grounds* 81 NY2d 772; *People v Bugayong,* 182 AD2d 450).

We observe that the People argued in summation that "in determining the defendant's intent, we submit that the fact finder may consider the facts surrounding the issuance of all the prescriptions in this case. * * * That repetition reduces the likelihood of mistakes or mere coincidence. * * * That the first throws light upon the last but equally it is true that the last throws light upon the first." The court concluded that as

a consequence of these arguments in the People's summation "the *Rosario* violation regarding two of the counts taints the entire indictment, even if each count of the indictment was based on a separate criminal transaction." In an appropriate case this reasoning might well warrant a similar result, e.g., if the tainted counts represented a substantial proportion of the total evidence on a disputed issue, in this case intent. Thus, if a defendant were convicted of three or four crimes which were urged as forming a pattern on the issue of intent, the setting aside of two counts might reasonably be deemed to taint the conviction of a third and fourth count as well. Conversely, if a defendant were convicted of twenty counts, the setting aside of two for a *Rosario* violation would not warrant setting aside the remaining eighteen even if it had been argued in summation that all twenty should be considered as forming a pattern on the issue of intent. The instant case falls between the two extreme examples cited above, but it is nevertheless evident in view of the overwhelming evidence against the defendant, and his inconsequential defense,\* that there was no reasonable possibility that setting aside counts ten and eleven could have affected the guilty verdict as to the remaining eight counts.

We have considered the contents of the May 11, 1990 transcript and find that it contains no *Rosario* material. Further, neither transcript contained material constituting exculpatory evidence within the meaning of *Brady v Maryland* (373 US 83, *supra*). Concur—Carro, J. P., Wallach, Kupferman, Kassal and Rubin, JJ.

---

\* Defendant's sole witness, an expert in psychiatric and mental health practices, opined that a psychiatrist could, under some circumstances, understand an addict's psychiatric problem by hearing a patient recite what drug he needed. But the expert conceded that defendant's examination of the People's shopper witnesses had been too scanty to prescribe drugs, and that defendant's practice of doing so on request, including processing the forms before seeing these patients "sounds more like a candy store than a doctor."