OPINION OF THE COURT
Bruce Allen, J.
In most criminal cases the Judge is not called upon to revisit the sentencing decision. From time to time, however, a sentenced defendant completes the appellate process unsuccessfully and then returns to the trial court with an application for resentencing consideration. Although there is no specific statutory provision authorizing such applications, the trial courts have seen fit to grant them in certain special *3 situations. This case presents, then, the following question: should this defendant be relieved of his one-to-five-year jail sentence because he now has a brain tumor? As I hope the following discussion makes clear, I have concluded not only that the defendant’s application is legally permissible but also that he is entitled to the extraordinary relief that he seeks.
The defendant, a 57-year-old physician, was convicted of 10 counts of criminal sale of a prescription for a controlled substance, a class C felony, on April 27, 1992, following a bench trial before Justice Stephen G. Crane. The evidence at trial established that agents of the Attorney-General’s office, posing as patients, visited the defendant’s Harlem office on several occasions and requested prescriptions for various controlled substances. The defendant prescribed the requested drugs without examining the patients properly to determine if the prescriptions were in fact warranted.
On June 10, 1992, Justice Crane sentenced the defendant on each count to a concurrent term of imprisonment of one to five years plus a series of fines totalling $100,000. Immediately following the sentencing proceeding, Justice Crane granted the defendant’s motion to stay execution of the sentence and allow bail pending appeal. The Judge ordered that the defendant be kept in medical isolation at Bellevue Hospital pending the posting of the bail and not be transferred to State prison. Two weeks later, the defendant posted bail and was released from Bellevue.
During the pendency of his direct appeal, the defendant filed a motion pursuant to CPL 440.10 claiming that the People had failed to provide certain Rosario material at trial. On February 26, 1993, Justice Crane granted the motion, and vacated the judgment of conviction on all 10 counts. The People appealed this order. In a decision dated December 7, 1993, the First Department affirmed the vacatur of judgment as to two counts, but reinstated the convictions on the remaining eight counts. (People v Baghai-Kermani, 199 AD2d 36.)
Meanwhile, between July and September of 1993 the defendant experienced several seizures which eventually led to the discovery of a tumor in his brain by his neurologist, Charles Stacey, M.D. Kalmon Post, M.D., a neurosurgeon consulted by the defendant in October 1993, confirmed that the defendant had a tumor which was probably cancerous, and recommended immediate surgery. The defendant consulted other physicians in the following months and they concurred with the diagnosis *4 made by Drs. Stacey and Post. Nevertheless, the defendant declined to go forward with an operation or even with a biopsy to determine if the growth was malignant. The defendant did agree to take a medication, Dilantin, to prevent additional seizures, and he continues to do so.
Following the loss of his section 440.10 motion in the First Department, the defendant proceeded with his direct appeal. Among other issues, the defendant contended that his sentence was excessive in light of his recently discovered tumor. On May 24, 1994, the First Department affirmed the eight remaining convictions and the sentence. With regard to the sentence issue, the court indicated that the defendant had provided insufficient current information regarding his condition and prognosis, and also noted that the issue should have been presented in the first instance to the trial court. (People v Baghai-Kermani, 204 AD2d 216.) The Court of Appeals then granted leave and all issues were raised on appeal, including the Rosario claim. On December 6, 1994, the Court of Appeals affirmed the First Department in all respects. (People v Baghai-Kermani, 84 NY2d 525.)
The defendant has now filed the instant motion before me (Justice Crane has been transferred to the Civil Term). In this motion the defendant asks for a nonjail sentence based primarily on recent medical tests indicating accelerated growth of the tumor.
The People oppose the motion on several grounds. First and foremost, the People contend that the trial court is precluded by CPL 430.10 from modifying the defendant’s sentence at this time.
CPL 430.10 provides: "Except as otherwise specifically authorized by law, when the court has imposed a sentence of imprisonment and such is in accordance with law, such sentence may not be changed, suspended or interrupted once the term or period of the sentence has commenced.” Combining this provision with the language of CPL 460.50 (1) that the "phase of the order staying or suspending execution of the judgment does not become effective * * * until the defendant is released”, it is the People’s position that the defendant’s sentence began to run during the two weeks he was in custody at Bellevue before the posting of bail. According to the People, this court is therefore without power to change the defendant’s sentence.
The argument fails for several reasons. In the first place, the People’s statutory construction conveniently overlooks *5 Penal Law § 70.30 (1), which states: "An indeterminate sentence of imprisonment commences when the prisoner is received in an institution under the jurisdiction of the state department of correctional services.” (Emphasis added.) Here, of course, the defendant remained under local supervision (at Bellevue) until his release. In accordance with Justice Crane’s specific order, he never was transferred to the State authorities. It follows, therefore, that the defendant’s sentence never commenced and that CPL 430.10 is not applicable.
Given Justice Crane’s order forbidding a transfer to the State, People v Ladone (147 Misc 2d 269 [Sup Ct, Queens County 1990]), which is cited by the People, is inapposite. In Ladone, the defendant was sentenced to consecutive indeterminate terms of imprisonment and was immediately remanded. That same day, he was granted a stay by a Justice of the Appellate Division and was released on bail. After his appeal was denied, but before his surrender, the defendant made a motion in the trial court for a modification of his sentence. The Judge ruled that the application was barred by CPL 430.10, finding that the defendant’s sentence term had commenced as soon as he was placed in the courtroom jail facilities following the sentencing proceeding. The court held that, when receiving a sentenced State prisoner, the courtroom facilities and the City Department of Correction are deemed agents of the State, and therefore the prisoner is immediately under the custody of the State Department of Correctional Services.
No such agency analysis fits the facts at hand. More fundamentally, the Ladone decision (supra) appears to limit the scope of CPL 430.10. True, the statute is aimed at preventing Trial Judges from changing sentences of imprisonment once the sentences have begun. But the Practice Commentaries to CPL 430.10 (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 430.10, at 401) make clear that the granting of a stay pending appeal ordinarily acts to allow a sentence to be interrupted. By the same token, when, as here, the appellate courts modify a defendant’s conviction in some way, a resentencing proceeding always is in order, and the Commentaries so state. (See generally, People v Baraka, 109 Misc 2d 271 [Crim Ct, NY County 1981] [Fried, J.].)
As a second procedural argument, the People assert that the defendant has already raised this issue on his direct appeal and lost. It is true that in seeking sentence reduction *6 on appeal the defendant referred to his brain tumor. But the record before that court was scanty and significant changes in the defendant’s condition have occurred since the appeal. As indicated, in rejecting the defendant’s appeal, the First Department stated that "no current information is provided about whether the tumor is malignant, whether defendant sought or received the surgery his own physician had recommended, and, if so, the outcome, and whether defendant’s seizures have been prevented by medication. Defendant, a physician himself, in fact fails to provide any factual supportable allegations concerning his present condition and prognosis, which allegations, moreover, should have been presented in the first instance to Supreme Court.” (People v Baghai-Kermani, 204 AD2d, supra, at 217.) Hence, the defendant’s sentence was not reduced, but it is implicit in this quoted passage that the trial court is the proper forum. (It is also clear from the passage that the First Department did not believe that this court was barred under CPL 430.10 from reconsidering the sentence.)
Not surprisingly, the weight of authority on the question of whether I may now entertain the defendant’s sentencing issue appears to support what common sense might suggest. In those rare instances where dire medical circumstances come to light after sentencing and too late for adequate consideration on appeal, but before the commencement of the sentence, the trial court has the power to modify the sentence. (People v Rutkowsky, 101 Misc 2d 740 [Suffolk County Ct 1979]; Hennessy v Cunningham, 57 AD2d 298, 301 [4th Dept 1977].)
In Rutkowsky (supra), the defendant was sentenced to an indeterminate term, which was stayed pending his appeal. After his appeal had been denied, the defendant moved the trial court to resentence him to a nonjail sentence. In support of the motion, the defendant submitted evidence that a long-term heart condition had continued to deteriorate to the point where he was likely to die if imprisoned. Given those special circumstances, the court granted the motion and resentenced the defendant as requested, even though the defendant had failed to raise an excessive sentence issue on appeal.
Is this case, like Rutkowsky (supra), one of those instances in which a resentencing motion properly lies? The record detailing the defendant’s medical condition is now complete. In August and December of 1994 the defendant underwent additional examinations and brain scans. The court-appointed *7 expert, Hillel Bodek, has examined these and earlier test results, spoken to the examining physicians and to the Department of Correctional Services medical personnel, collected and submitted numerous medical reports, and reported his findings to the court. Additionally, the court has received correspondence from Dr. Vidya Malhotra, reporting the results of a magnetic resonance imaging (MRI) that she performed on the defendant’s brain approximately one month ago.
Taken together these tests confirm that the defendant’s present condition is extremely serious. While no biopsy has yet been performed, Dr. Malhotra opines that the defendant’s tumor, which is now 5 centimeters at its widest point, is most likely a "mixed glioma” — that is, a lesion made up of partly malignant and partly benign tissue. The earlier tests had apparently suggested that the tumor’s growth would be relatively slow. However, the December 1994 tests show a significant increase in size — 20%—over the four preceding months. The tumor is located inside the cranium on the rear right side of the defendant’s brain, pressing on the area which controls motor functions. Indeed, given its size, growth speed, and location, the tumor poses a threat whether or not it is malignant. In the absence of surgery, the current prognosis is that the tumor will continue to grow and will cause seizures, paralysis, and death within one to two years.
On the other hand, the doctors suggest a somewhat more optimistic prognosis if the defendant undergoes immediate surgery, with follow-up radiation treatments if the tumor does prove to be at least in part malignant. It is still possible, despite the recent growth, to remove the tumor without causing any permanent damage to any functions of the brain. Although some damage cannot be ruled out, and the surgery would be very dangerous, the fact remains that the defendant has a chance to make a significant recovery and lead something close to a normal life. The doctors cannot predict what the odds are for a successful outcome.
On balance, I am satisfied that the defendant has a life-threatening medical condition which necessitates resentencing consideration. The key fact, of course, is the dramatic growth of the tumor in the past few months. Modern medical techniques may yet save the defendant’s life, but that does not reduce the seriousness of the situation. It is now apparent that the defendant faces either radical surgery or likely paralysis and death during the period he would be imprisoned, if the original sentence imposed by Justice Crane were im *8 posed. It is not significant, in my view, that the jail sentence itself may not aggravate the defendant’s condition or cause death; this is not that kind of case.
As noted, the defendant has thus far refused to undergo the surgery, despite the repeated recommendations of his physicians. The failure to provide more information at the time of the defendant’s direct appeal, furthermore, was due in part to the fact that he had not been examined recently. However, this scenario differs significantly from the one presented in Hennessy v Cunningham (supra). There, the defendant had been suffering from multiple sclerosis for many years but did not bring it to the attention of the court until making it the basis for a motion to resentence after his appeal was exhausted. Nor did the defendant’s condition change throughout the entire process. In reversing the lower court decision granting the motion, the Fourth Department concluded that the defendant could not proffer to the trial court a claim which he had known about all along but had chosen to hold in reserve until after he had completed the appellate process. Here, there has been no withholding of information. This court has been apprised of the tumor from the outset, and the defendant sought to raise the issue on appeal.
Equally without merit is the related contention offered by the People that the defendant’s reluctance to follow up on medical advice has been connected with this application for a nonjail sentence. To the contrary, the defendant’s refusal to go forward with an operation appears to be no more than an irrational reaction to the unfavorable -diagnosis rather than a resort to gamesmanship. After all, a bed in Attica — a bleak prospect, to be sure — is preferable to an untreated brain tumor. The defendant began to balk, furthermore, even before his eight convictions had been reinstated on appeal.
The sentencing decision is often difficult because it involves a mingling of divergent factors. As always, Justice Crane performed with exceptional artistry when he concluded that a jail sentence was appropriate in this unique case. The sentencing minutes reveal that he engaged in a careful balancing process, taking into consideration the circumstances of this defendant, the nature of his offenses, and the general need to deter others who might engage in similar activity. Without question, Justice Crane’s decision to impose a sentence of one to five years in jail for these serious crimes was entirely justified at the time. But that decision was made long before the defendant’s tumor had been discovered. Had Justice Crane *9 known what I now know about the defendant’s dire medical condition, I am confident that he would have agreed with me that a jail sentence is not warranted. "Justice seasoned by mercy” (if I may misquote Shakespeare) requires no less.
Accordingly, the application is granted and the defendant is resentenced to a conditional discharge and a fine of $10,000 on each of the eight counts.