■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ABDOLHOSEIN BAGHAI-KERMANI, Respondent. [634 NYS2d 58] —Order of the Supreme Court, New York County (Bruce Allen, J.), entered January 20, 1995, which vacated that portion of the June 10, 1992 judgment of conviction (Stephen Crane, J.) that imposed eight concurrent terms of imprisonment of one to five years and which resentenced defendant to eight concurrent conditional discharges, unanimously reversed, on the law, the prior sentences reinstated and the matter remitted to the Supreme Court, New York County pursuant to CPL 460.50 (5) for defendant to surrender himself to commence execution of his sentence.

On May 24, 1994, we affirmed defendant's judgment of conviction (*People v Baghai-Kermani*, 204 AD2d 216, *affd* 84 NY2d 525) as modified by our December 7, 1993 decision and order (*People v Baghai-Kermani*, 199 AD2d 36, *lv denied* 82 NY2d 921), and remitted the case to the trial court for further proceedings in accordance with CPL 460.50 (5). When defendant was brought before the Supreme Court, the Trial Justice who had conducted the bench trial in this matter was no longer sitting in the Criminal Term and a different Justice was presiding in the court part. Rather than execute the sentences that the Trial Justice had previously imposed, the newly assigned Justice adjourned the matter and then ultimately granted defendant's application for resentencing by vacating the eight concurrent prison terms and imposing conditional discharges in their stead.

We agree with the resentencing court to the extent that it concluded that, given the particular facts of this case, it had the power to modify defendant's previously imposed sentences because the defendant's sentences had not yet "commenced" within the meaning of the law. Following the original June 10, 1992 sentencing, defendant spent fourteen days in Bellevue Hospital under local supervision as he went about complying with the conditions of the trial court's order for bail pending appeal. During this time defendant's sentences did not "commence" because he was not incarcerated under the jurisdiction of the State Department of Correctional Services (CPL 430.10; Penal Law § 70.30 [1]).

The People, relying on *People v Ladone* (147 Misc 2d 269), argue that defendant's hospital stay constituted commitment to the State Department of Correctional Services under an agency analysis. However, we do not read this record as the People do. The trial court, in granting defendant's motion for a stay of execution pending appeal, specifically directed "that the defendant not be placed in the course of transference to State prison and be kept in * * * medical isolation [at Bellevue Hospital] pending the posting" of bail. In short, the facts here are unlike those in *Ladone*.

However, our determination that the resentencing court had the power to modify the defendant's sentences does not answer the ultimate question of whether it was appropriate in this case for the court to exercise such authority. In our view, the resentencing court abused its discretion in vacating the prison terms because this is not the "rare case" with "exceptional circumstances" (*Matter of Hennessy v Cunningham*, 57 AD2d 298, 301) justifying the drastic change in sentence that occurred. The original sentences were imposed, as explained by the court that heard all the evidence, with a view, *inter alia*, towards having a deterrent effect on other physicians who, like defendant, might be tempted to abuse their medical licenses by improperly prescribing drugs to drug-dependent individuals and then bilking the Medicaid system in the process. On defendant's direct appeal we rejected defendant's excessive sentence claims. Now, in assessing the equities of the sentence modification, we must look at those matters which arose subsequent to the intermediate appellate review of defendant's sentence *(supra)*. The only significant change defendant claims is his deteriorating health. A modification based on a defendant's deteriorating health must be based on medical proof which convincingly establishes that incarceration would have an extremely deleterious impact *(see, People v Browarnik*, 42

AD2d 953). Here, this proof is lacking, and modification of the original sentence constituted an abuse of the court's discretion and resulted in the imposition of an illegal sentence.

Defendant, a doctor, has, by his own choice, while at liberty, consistently refused to undergo a biopsy of his brain tumor, thereby precluding knowledge of whether it is malignant. It cannot be said on this record that defendant established that "incarceration would probably cause [his] death" *(People v Browarnik, supra)* and the resentencing court's finding that the tumor has grown "dramatically" is without support. Indeed, Dr. Vidya Malhotra's report on the comparison undertaken between defendant's December 1994 MRI and those of October 1993 and August 1994 states that there had only been "a slight increase" in the dimensions of the mass since August 1994 and that this could be due to technical differences in measuring techniques. We agree with the People that the report confirms what was known as early as October 1993, that defendant should have undergone the low-risk surgery for removal of his tumor. By choosing to refuse surgical intervention, defendant has placed himself in no less a perverse situation than the child who kills his parents and then pleads to the court for mercy because he is an orphan.

Over the past decade, particularly given the development of AIDS as a significant medical condition in the prison population, we have often had occasion to balance the interest of society in carrying out the multiple objectives of the criminal law against the need to temper justice with mercy in the case of ailing defendants. Whether in the context of reviewing excessive sentence claims or decisions on motions seeking interest of justice dismissals, we have not adopted a view that terminal illness, even in cases where the diagnosis was far more certain and far more dire than the speculative prognosis here, will *per se* permit a defendant to evade the consequences of his criminal behavior. We find no compelling reason to adopt a different approach in the context of reviewing this application for a sentencing modification. Once defendant commences his sentence, he can, should he finally choose to do so, still proceed with treatment. If through objective medical examination, the State Department of Correctional Services determines that defendant is suffering from a terminal condition, disease or syndrome, he can make an application to the Parole Board for a "medical parole" under section 259-r of the Executive Law.

Thus, we reverse and reinstate the original sentences. Concur—Rosenberger, J. P., Rubin, Asch, Williams and Mazzarelli, JJ. *[See, 165 Misc 2d 1.]*