OPINION OF THE COURT
Jan H. Plumadore, J.
" 'If the law supposes that,’ said Mr. Bumble * * * 'the law is a ass’ ” (Dickens, Oliver Twist, ch 51 [emphasis supplied]).
*703 As the laws of society change and evolve with ever-increasing complexity, Dickens’ quote from a relatively simpler time seems to fit with disturbing frequency.
The present Criminal Procedure Law became effective on September 1, 1971 replacing the Code of Criminal Procedure which had been in existence since 1881. The Penal Law was passed in 1965 replacing the 1909 Penal Law. Each of these statutes represented the culmination of several years of work by the Temporary Commission on Revision of the Penal Law and Criminal Code. Among the tasks the Commission undertook in addition to research and draftsmanship was to examine the effects of different sections of the new criminal statutes on each other and upon other laws as well. The objective, of course, was to eliminate any unintended ones. The result was a rational, workable set of criminal statutes which received nearly unanimous acclaim within the legal community as a vast improvement over what had been in place. The previous statutes over time had become something of a patchwork of successive amendments.
Of course the newly enacted statutes were not immune to the ongoing, even routine process of legislative amendment and/or judicial interpretation. The Rockefeller drug laws of 1972 and the plea bargaining and sentencing restrictions of 1980 are some notable legislative examples. The unconstitutionality of the original murder, first degree statute was probably the most visible example of judicial input.
In more recent times we have seen the passage of vehicular assault and manslaughter statutes (1985), a new murder, first degree statute (1995) and most recently a new violent felony sentencing statute (1995). It should be noted that these rather extensive amendments were the product of legislative draftsmanship only and without the'benefit of any comprehensive review by a study commission such as the one which produced the parent statutes. The amendments were enacted for laudable reasons but some have had obviously unintended consequences. Several are, of course, creatures of the compromise required for their passage. The end result of this process can frequently resemble the proverbial camel (that is, a horse designed by committee). One result reasonable people might question is how recklessly causing serious physical injury to another person can be a violent felony (Penal Law §§ 120.05, 120.10 [3]) while recklessly killing another person is not (Penal Law § 125.15 [1]; § 70.02 [1] [b]).
The essential facts in this case are that during a May 3, 1996 drinking bout which began in their home State of Vermont, *704 three companions became embroiled in an altercation among themselves while traveling. In the fray, the defendants ultimately prevailed over an intoxicated Marcus Alan Chadwick, seriously injuring him in the process. They then placed Chadwick next to a logging road in the Town of Moriah, Essex County, New York, removed his identification and wallet, and laid a large tree limb across his prostrate form before leaving him to return to Vermont. Mr. Chadwick expired where he had been left.
Defendants were both indicted for "depraved mind” murder (Penal Law § 125.25 [2]) and manslaughter, second degree (Penal Law § 125.15 [1]), among other crimes. At conference the District Attorney offered to allow each defendant to plead guilty to manslaughter, second degree, as charged in the indictment in full satisfaction of it and all other counts. The District Attorney also placed all parties on notice that he would be requesting the maximum term at sentencing. Defense counsel recommended the proposed disposition to their clients, the defendants accepted and the court approved it. All counsel and the court were fully aware of the plea bargaining restrictions contained in CPL 220.10 (5) (d) (i) which states: "Where the indictment charges a class A felony offense or a class B violent felony offense which is also an armed felony offense then a plea of guilty must include at least a plea of guilty to a class C violent felony offense”. All counsel and the court likewise believed that manslaughter, second degree, was enumerated as a violent felony offense in section 70.02 of the Penal Law. It is not but probably should be.
The defendant Taylor was sentenced to the maximum term of 5 to 15 years as a first felony offender pursuant to Penal Law § 70.00 (2) and (3) notwithstanding the fact that he had an extensive criminal record including at least one felony conviction in Vermont which was not a felony under New York law. The defendant Hathaway was sentenced (rather disparately) as a second violent felony offender to the maximum, a determinate term of 15 years. (Penal Law § 70.00 [6]; § 70.06 [6].) It was subsequently pointed out by the Department of Correctional Services (DOCS) that this latter sentence was illegal because manslaughter, second degree, is not an enumerated violent felony under Penal Law § 70.02 and therefore a determinate sentence pursuant to Penal Law § 70.06 (6) cannot be imposed.
Penal Law § 70.06 (6), it should be noted, makes specific reference to section 70.02 in its restrictive language:
"[Eff. until Sept. 30, 2005.] Determinate sentence. When the court has found, pursuant to the provisions of the criminal *705 procedure law, that a person is a second felony offender and the sentence to be imposed on such person is for a violent felony offense, as defined in subdivision one of section 70.02, the court must impose a determinate sentence of imprisonment the term of which must be fixed by the court as follows * * *
"(b) For a class C violent felony offense, the term must be at least five years and must not exceed fifteen years” (emphasis added).
Inasmuch as manslaughter, second degree, is not defined in Penal Law § 70.02 (1) as a violent felony offense, the determinate sentence imposed upon defendant Hathaway was clearly improper and must be vacated.
Having determined that the sentence was illegal and must be vacated, we now turn to the question of whether the guilty pleas were also illegal thus mandating (or even permitting) the court to vacate them as well.
CPL 220.10 (5) (d) (i) provides in pertinent part that, where an indictment charges a class A felony, any plea of guilty to the indictment must include "at least a plea of guilty to a class C violent felony offense”. "Violent felony offenses” are defined in Penal Law § 70.02 (1). (See, McKinney’s Cons Laws of NY, Book 1, Statutes § 221 [c].) Manslaughter in the second degree is not listed in the Penal Law as a class C violent felony offense. (See, Penal Law § 70.02 [1] [b].) Assuming therefore that the guilty pleas entered herein were unauthorized, does this court have authority to correct the ostensible error? Under the circumstances of this case, it appears that this court has neither statutory nor inherent authority to correct such a mistake. Trial courts have "inherent” authority to vacate an illegally accepted plea of guilty before sentence is imposed. (People v Bartley, 47 NY2d 965 [1979].) Such courts may also, absent specific constitutional impediment, vacate a final judgment on grounds of fraud or misrepresentation (Matter of Kisloff v Covington, 73 NY2d 445, 451 [1989]; Matter of Lockett v Juviler, 65 NY2d 182, 186-187 [1985]; Matter of Lyons v Goldstein, 290 NY 19, 25 [1943]). Moreover, a court’s inherent power to correct its own records where a mistake is clerical in nature extends to errors where "the court merely misspoke or a patent clerical mistake has been made [citations omitted].” (People v Moquin, 77 NY2d 449, 452 [1991]; People v Minaya, 54 NY2d 360, 364 [1981], cert denied 455 US 1024.) However, "the limited 'inherent authority’ to vacate a plea after imposition of sentence may not be utilized to remedy a substantive legal error in the *706 acceptance of the plea, at least after the defendant has begun serving his sentence” (People v Moquin, supra, at 452) or "where the proceeding has terminated by the entry of judgment” (Matter of Campbell v Pesce, 60 NY2d 165, 169 [1983] [emphasis supplied]; see also, Matter of Kisloff v Covington, supra [a case factually similar to the instant matter]).
Here, all the parties were laboring under the misimpression that manslaughter in the second degree was included in the listing of class C violent felony offenses in Penal Law § 70.02 (1) Ob). The guilty pleas were entered and accepted, sentences were imposed, and the defendants were committed to the custody of the Department of Correctional Services to begin serving those sentences (their rights to appeal having been waived as part of the plea agreement). (See, People v Ladone, 147 Misc 2d 269, 270-271 [Sup Ct, Queens County 1990]; compare, People v Baghai-Kermani, 221 AD2d 219, 220 [1st Dept 1995].) Furthermore, neither the People nor the defendants will consent to the undoing of their bargain. Based upon the foregoing, this court is without either statutory or inherent authority to do it for them. Therefore, even if improper, the guilty pleas entered herein must be permitted to stand.
In any event, for the reasons which follow, it is this court’s further opinion that the guilty pleas entered herein were in fact legally permissible under CPL 220.10 (5) (d) (i). Under the factual circumstances of this case, it is held that, although not enumerated as such in Penal Law § 70.02 (1), manslaughter, second degree, was a class C violent felony offense which satisfied the requirements of CPL 220.10 (5) (d) (i) for purposes of the guilty pleas entered herein by the defendants.
CPL 220.10 (5) (d) (i) provides in pertinent part that, where an indictment charges a class A felony, any plea of guilty to the indictment must include "at least a plea of guilty to a class C violent felony offense”. Unlike Penal Law § 70.06 (6), noted above, there is no specific reference in CPL 220.10 (5) (d) (i) to a "violent felony offense, as defined in subdivision one of section 70.02 [of the Penal Law]”. It is therefore arguable that a plea of guilty to any class C felony which, under the facts of the particular case, contained the requisite "element” of violence, would satisfy the plea bargaining restriction in CPL 220.10 (5) (d) (i). (Cf., McKinney’s Cons Laws of NY, Book 1, Statutes §§ 232-234.)
The fundamental purpose for the statutory limitations on plea bargaining is to insure that, in certain legislatively determined instances, either: (a) a defendant will not be permit *707 ted to bargain around a sentence of imprisonment, or (b) a record of felony conviction will be established "for purposes of sentencing the defendant as a second felony offender, either in the present case or in the future.” (See, Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 220.10, at 12.) CPL 220.10 (5) (d) (i) was enacted in its present form in 1980, long prior to the enactment of the Sentencing Reform Act of 1995 (L 1995, ch 3) and the introduction of the determinate sentence for a second felony offender who presently stands convicted of a "violent felony offense, as defined in subdivision one of section 70.02 [of the Penal Law]”. (Penal Law § 70.06 [6].) At the time of the plea restrictions enactment, any distinction between a class C felony involving violence and a class C violent felony offense defined in Penal Law § 70.02 (1) (b) would have made no difference for sentencing purposes. The maximum authorized sentence in defendant Hathaway’s case would have been identical for either a violent or "nonviolent” second felony offense (to wit: an indeterminate term of imprisonment of from 71/2 to 15 years). (See, Penal Law § 70.06 [3], [4].) The same would also be true for a nonpredicate felon, such as defendant Taylor. The maximum authorized sentence would have been the same in either instance (to wit: an indeterminate term of imprisonment of from 5 to 15 years). (See, Penal Law § 70.00 [2], [3]; § 70.02 [3], [4].) Thus, the guilty pleas entered and accepted herein clearly comported with the fundamental legislative purpose in enacting CPL 220.10. This, in turn, would indicate that the Legislature never intended to limit the guilty plea alternatives available under CPL 220.10 (5) (d) (i) to only those listed in Penal Law § 70.02 (1). No legislative purpose would have been served by such a restrictive statutory construction. Subsequently enacted amendments to the Penal Law sentencing provisions, without concomitant amendments to the plea restriction provisions of the Criminal Procedure Law, would not retroactively alter either this original legislative intent or the appropriate construction to be accorded the statute. (See, McKinney’s Cons Laws of NY, Book 1, Statutes §§ 222, 223.)
Under the facts in this case, the "actual/requisite” violence can easily be found in the elements of the crime pleaded to. Manslaughter, second degree (Penal Law § 125.15 [1]), a class C felony, is a recognized lesser included offense of "depraved mind” murder (Penal Law § 125.25 [2]), a class A-l felony. (See, People v Ivisic, 95 AD2d 307, 311-312 [2d Dept 1983].) "Depraved mind” murder cannot be committed without concomitantly, by *708 the same conduct, committing the crime of manslaughter, second degree. The culpable mental state for both is the same. The violence inherent in recklessly causing the death of another is therefore present in both degrees of the crime.* The difference between the two, the "depraved indifference to human life” phrase which elevates the killing to a murder, refers only to the wantonness of the defendant’s conduct; it converts the "substantial risk of death” present in manslaughter to the "very substantial risk” present in murder. (See, People v Moquin, 142 AD2d 347, 352 [3d Dept 1988]; People v Register, 60 NY2d 270, 276-279 [1983].)
Furthermore, both felony level reckless assaults are classified as "violent felony offenses” pursuant to Penal Law § 70.02 (1). Assault in the second degree (Penal Law § 120.05) is classified as a class D violent felony offense. (Penal Law § 70.02 [1] [c].) Assault in the first degree (Penal Law § 120.10), previously classified as a class C violent felony offense, was elevated by the Legislature to a class B violent felony offense in 1996. (See, Penal Law § 70.02 [1] [a], as amended by L 1996, ch 646, § 1, eff Nov. 1, 1996.) The reason for the change is instructive:
"Classification of assault in the first degree as a class C [violent] felony has meant that the authorized punishment for crimes against property such as robbery in the first degree, a class B [violent] felony, which may be accomplished by merely threatening a victim with a dangerous instrument, is more severe than the punishment authorized for assault in the first degree for wanton brutality, resulting in a permanent and disfiguring injury. This bill is meant to end this inequity.
" Violent crimes against the person must not he treated as less serious than crimes against property.” (Mem of Assembly, 1996 McKinney’s Session Laws of NY, at 2580-2581 [emphasis supplied].)
It appears to this court that death is "a permanent and disfiguring injury”, certainly no less violent than the assaultive conduct which recklessly caused it, meriting a classification comparable with crimes of ostensible violence against property. (See, Penal Law § 10.00 [10].)
Moreover, under the factual circumstances of this case, it appears to this court that reckless assault in both the first and second degrees could conceivably qualify as lesser included of *709 fenses of the "depraved mind” murder charged herein. "Assault, first degree”, under Penal Law § 120.10 (3) requires three elements: (1) serious physical injury ("serious physical injury” by definition includes death [Penal Law § 10.00 (10)]); (2) reckless conduct creating a grave risk of death; (3) under circumstances evincing a depraved indifference to human life. "Assault, second degree”, under Penal Law § 120.05 (4) also requires three elements: (1) serious physical injury; (2) recklessly caused; (3) by a deadly weapon or dangerous instrument (which could include a large tree limb). It would seem that one could not commit the murder charged herein without concomitantly committing these reckless assaults. Thus, like manslaughter, second degree (discussed above), they are also lesser included offenses of "depraved mind” murder. Unlike manslaughter, second degree, however, these lesser included reckless assaults are classified as violent felony offenses under Penal Law § 70.02 (1); incongruously, the lesser included reckless homicide embodied by manslaughter, second degree, is not. All three require the same culpable mental state (reckless); the required conduct is substantially the same (recklessness); yet the one with the most severe consequence (death) is the one least seriously classified.
It is inconceivable to this court that the Legislature could have intended such a result when it enacted the plea bargaining restrictions contained in CPL 220.10 (5) (d) (i). (See, McKinney’s Cons Laws of NY, Book 1, Statutes § 145.) The statutory construction set forth above avoids this otherwise less than sensible circumstance. Based upon the factual circumstances in this case, manslaughter, second degree, must be considered the equivalent of a class C violent felony for plea purposes, notwithstanding its exclusion from the listing of "violent felony offenses” contained in Penal Law § 70.02 (1). Thus, inasmuch as the guilty pleas herein are legally permissible under CPL 220.10 (5) (d) (i), they cannot be vacated on the court’s own motion over the objection of either party. (People ex rel. Hunt v McDonnell, 201 Misc 406 [Sup Ct, Kings County 1951].) Both the People and the defendants have voiced an intention to object thereto. Therefore, the defendants’ guilty pleas as entered must be permitted to stand and defendant Hathaway resentenced as a second felony offender. (Penal Law § 70.06 [2], [3], [4].)

 Although not defined as such in Penal Law § 70.02 (1), a class A felony (other than one defined in Penal Law art 220) is clearly deemed to be a violent felony offense. (See, Penal Law § 70.04 [1] [b] [i].)