■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SHERYL DOWLING, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GRANTLEY HUNTE, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GARTH ROBINSON, Appellant. [698 NYS2d 11] —Appeals from judgments, Supreme Court, New York County (Colleen McMahon, J.), rendered April 17, 1996, convicting defendants, after a joint jury trial, of various offenses arising out of their scheme to defraud investors, held in abeyance, and the matters remanded for a *Rosario* hearing.

Defendants were brokers at a company originally known as Oxford Capital Securities. By the time defendants joined the company, Oxford had allegedly embarked on a wide-ranging "Ponzi scheme", selling fraudulent investment agreements and certificates. It was charged that defendants and other brokers at the firm misrepresented to clients that their money was being invested in legitimate, risk-free securities that would pay high returns, while in reality the money was being spent by defendants and their accomplices.

The three defendants who are parties to this appeal, along with five of their cohorts, were indicted for enterprise corruption and related crimes, but defendants were later granted a separate trial from the other five. After a joint trial, Sheryl Dowling was convicted of scheme to defraud in the first and second degrees, five counts of violating General Business Law § 352-c (6), and two counts of violating General Business Law

§ 352-c (1) (a). She was sentenced to a split term of 3 months of weekends in jail and 5 years' probation, and ordered to pay $119,550 restitution. Grantley Hunte was convicted of violating General Business Law § 352-c (5) and General Business Law § 352-c (1) (c), four counts of violating General Business Law § 352-c (6) and two counts of scheme to defraud in the first degree. He was sentenced to 6 months in jail and 5 years' probation, and ordered to pay $721,747.30 restitution. Garth Robinson was convicted of scheme to defraud in the first and second degrees, violating General Business Law § 352-c (1) (a), five counts of violating General Business Law § 352-c (6) and three counts of violating General Business Law § 352-c (1) (c). He was sentenced to a split term of 4 months of weekends in jail and 5 years' probation, and ordered to pay $140,380.57 restitution. Defendants are currently at liberty on bail pending appeal.

The only claim of error we address at this juncture is defendants' allegation that the People did not turn over all *Rosario* material. *People v Rosario* (9 NY2d 286, *cert denied* 368 US 866) and CPL 240.45 (1) (a) require the prosecution to disclose prior recorded statements of a witness that relate to the subject of the witness's trial testimony. During the trial, the prosecution revealed that it had prepared outlines of information that it hoped to elicit from its Grand Jury witnesses. The outlines contained questions for the prosecutor to ask, followed by expected answers. The defense argued that these outlines should be disclosed because they must have been based on information derived from witnesses' prior statements to the investigating Assistant District Attorneys. In other words, since notes of witness interviews must be disclosed, the defense contended that *Rosario* also applied to a recasting of the same information in outline form.

After reviewing the materials *in camera* and holding an abbreviated *Rosario* hearing, the trial court directed the People to turn over some of the outlines that were based on interviews with investors and cooperating employees of Oxford. However, it denied disclosure of several other outlines, including the two extensive outlines relating to cooperating witnesses Leonard Donner and Guillermo Tolosa. The other outlines not considered *Rosario* material by the trial court pertained to cooperating witness Dhanraj, two investors named Ellington and Flerry, an accountant named Castleton and a National Association of Securities Dealers investigator named Strombelline.

The court reasoned that these outlines were too lengthy and

well-organized to have been composed during witness interviews, and surmised that they must have been based on preexisting notes. Accordingly, the court deemed these outlines to be the work product of the prosecutors who created them subsequent to the interviews, rather than the recorded statements of the witnesses. The prosecutor who prepared the Donner outline testified at the *Rosario* hearing that he compiled the outline from his notes. The People represent to this Court that the contemporaneous notes of the prosecutor's interviews with Donner had already been disclosed. The record does not disclose whether the trial court reviewed the 72-page Tolosa outline in any depth, nor (by contrast to the Donner outline) were the circumstances of its creation explored at the hearing. The same is true for the other five outlines. Nor is the record clear that the trial court performed a detailed comparison of the Donner notes and outline to ascertain whether the latter was merely a digest, or the duplicative equivalent, of the former.

We therefore remand for a more complete *Rosario* hearing to elucidate, *inter alia*, the manner in which these witness outlines were created (see, *People v Adger*, 75 NY2d 723, 726), because the record does not disclose that the trial court performed a thorough and complete examination of the Tolosa outline or heard testimony from the prosecutors about their creation of the undisclosed outlines at issue (other than Donner's). In particular, questions exist as to whether the court correctly assumed that these outlines were based on interview notes, and, if so, whether these notes were turned over to the defense. Alternatively, if it is revealed at the hearing that these outlines were drafted after the interview without the use of contemporaneous notes, the outlines themselves would be considered witness statements under *Rosario* (see, *People v Cavallerio*, 71 AD2d 338, 344). It has long been the law in this State that the People may not circumvent their disclosure obligations simply by altering the format of the information gleaned from a witness interview, or by recording it after the interview rather than contemporaneously (*People v Consolazio*, 40 NY2d 446, 453, *cert denied* 433 US 914). Indeed, the trial court relied on these principles in deciding to compel disclosure of other witness outlines in this case and granting the defense's request for an adverse inference charge (see, *People v Gourgue*, 239 AD2d 357, 358).

With respect to all of the outlines, disclosure of the underlying witness interview notes would satisfy the prosecution's *Rosario* obligations if the outlines were merely digests of the

notes (*People v Miles*, 23 NY2d 527, 541, *cert denied* 395 US 948). The parties' submissions erroneously frame the issue as whether the outlines are the duplicative equivalent of the witnesses' Grand Jury testimony. However, two items are duplicative equivalents only if they are identical in every detail; it is not enough to show that they are harmonious or consistent with one another (*People v Joseph*, 86 NY2d 565, 569). While the outlines may well have predicted the substance of the witnesses' subsequent testimony, logically they could not be identical to it. Thus, as neither the parties nor the trial court appear to have focused properly on this question, a more detailed comparison between the outlines and any relevant underlying notes should take place at the hearing on remand. Concur—Rosenberger, J. P., Tom, Mazzarelli, Lerner and Friedman, JJ.