■ In the Matter of KYLE O., a Person Alleged to be a Juvenile Delinquent, Appellant. [612 NYS2d 665] —In a juvenile delinquency proceeding pursuant to Family Court Act article 3, the appeal is from an order of disposition of the Family Court, Queens County (Lauria, J.), dated July 21, 1992, which, upon a fact-finding order of the same court, dated March 24, 1992, made after a hearing, finding that the appellant had committed acts which, if committed by an adult, would have constituted the crimes of robbery in the second degree, assault in the second degree, robbery in the third degree, assault in the third degree, grand larceny in the fourth degree, and petit larceny, adjudged him to be a juvenile delinquent and placed him on probation for a period of 12 months. The appeal brings up for review the fact-finding order dated March 24, 1992.

Ordered that the order of disposition is reversed, on the facts, without costs or disbursements, the fact-finding order is vacated, the petition is dismissed, and the appellant's record is sealed pursuant to Family Court Act § 375.1.

Upon weighing the relative probative force of the conflicting testimony and the relative strength of the conflicting inferences which may be drawn therefrom *(see,* CPL 470.15 [5]; *People v Bleakley,* 69 NY2d 490; *People ex rel. MacCracken v Miller,* 291 NY 55), we find that the Family Court failed to give the evidence in this case the weight it should be accorded. In this single eyewitness case, the sole evidence adduced by the presentment agency consisted of the often uncertain and self-contradictory testimony of the complainant. According to that testimony, the complainant, a 16-year-old student, was a passenger on a Q 88 city bus on the afternoon of November 7, 1991. His testimony was inconsistent with regard to the time at which he boarded the bus. Six black male youths subsequently boarded the bus and eventually accosted the complainant. Again, the complainant gave inconsistent testimony regarding the amount of time the group was on the bus before approaching him. The youths beat and kicked the complainant, stole currency and other items from his person, and

forcibly ejected him from the bus when the vehicle came to a halt. The complainant stated that the bus operator, a black female, did nothing to stop the beating. After the incident, the complainant provided the police with detailed descriptions of the physical characteristics and clothing of two of the assailants, but was unable to describe any of the other four participants. He further testified that neither of the two individuals he described to the police was the appellant. On the day following the incident, while the complainant was canvassing the area with detectives, he observed a number of students who were exiting a nearby school and immediately identified one of the two assailants whom he had previously described to the police. He then pointed out the appellant, who was in fairly close proximity to the previously identified individual, as another of his attackers. The complainant steadfastly maintained that both on the date of the incident and at the time of the appellant's arrest on the following day, the appellant was wearing a navy blue, hooded jacket with fur trim on the hood.

The defense presented several witnesses who seriously undermined the accuracy and reliability of the complainant's identification testimony. For example, the bus depot superintendent who was responsible for the supervision of the Q 88 bus line provided testimony and documentary evidence which established that no black female bus driver worked on the Q 88 line on the date of the incident. In fact, none of the operators on the Q 88 line that day was female. Moreover, the detective who canvassed the area with the complainant on the day following the incident unequivocally testified that the appellant was wearing a green "army jacket" at the time of his arrest. This fact was confirmed by the appellant's father, who testified that the appellant was wearing a green army jacket when he picked him up at the police station following his arrest. Furthermore, the testimony of the appellant's parents and brother demonstrated that the appellant did not own a navy blue, hooded jacket with fur trim or any similar garment. Additionally, the appellant and two other witnesses supplied logically consistent alibi testimony which effectively placed the appellant on an earlier bus than the one on which the complainant was attacked and thus supported the appellant's claim of mistaken identity.

Hence, the only evidence linking the appellant to the crime was the identification by the complainant, the accuracy of which was severely compromised by the complainant's erroneous description of the bus driver and of the appellant's attire, his total inability to provide the police with any description of

the appellant on the date of the incident, the fact that the identification occurred while the appellant was in fairly close proximity to a previously described and identified individual, and the frequently uncertain and inconsistent testimony of the complainant. Indeed, these factors cast grave doubt on the complainant's ability to accurately perceive and/or recall the incident (see, People v Langford, 153 AD2d 908). Given the weak and often erroneous testimony of the complainant and the comparatively consistent alibi evidence proffered by the appellant, we find that the proof is not sufficient in quantity or quality to support the determination of guilt beyond a reasonable doubt (see, People v Crudup, 100 AD2d 938). Accordingly, we reverse the Family Court's determination as being against the weight of the evidence and dismiss the juvenile delinquency petition (see, CPL 470.20 [5]). O'Brien, J. P., Ritter, Santucci and Krausman, JJ., concur.