Matter of Ricardo M. (2006 NY Slip Op 51468(U))

[*1]

Matter of Ricardo M.

2006 NY Slip Op 51468(U) [12 Misc 3d 1187(A)]

Decided on July 25, 2006

Family Court, Richmond County

DiDomenico, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 25, 2006

Family Court, Richmond County
In the Matter of Ricardo M., a Person Alleged to be a Juvenile Delinquent, Respondent.
D-4965/05

Catherine M. DiDomenico, J.
In this case, alleging theft of a cell phone, the Presentment Agency concedes that the failure to produce (i) the handwritten version of the complaining witness' initial complaint made to the police officer ("scratch notes"); and (ii) the handwritten notes, taken November 9, 2005 (the "November 9 Interview"), by Detective H. during his police station interview of the Respondent are Rosario violations. People v. Rosario, 9 NY2d 286 (1961).[FN1] After considering the prejudicial effect of these violations, the Court determines that an adverse inference must be drawn with respect to each omission. After considering these adverse inferences, and assessing the credibility of the witnesses at fact-finding, this Court finds that the Presentment Agency has failed to prove, beyond a reasonable doubt, that Respondent committed any of the offenses charged in the Petition. Accordingly, the Petition is dismissed.
Background
The Presentment Agency filed this Petition on December 5, 2005, alleging that Respondent committed Robbery in the Third Degree, P.L.§160.05, Grand Larceny in the Fourth Degree, P.L.§155.30(5), Petit Larceny, P.L.§155.25 and Criminal Possession of Stolen Property in the Fifth Degree P.L.§165.40, when he allegedly stole a cell phone from the complaining witness as she walked home from school.
[*2]
On December 30, 2005, Respondent, by his counsel, demanded hearings pursuant to People v. Huntley, 15 NY2d 72 (1965) and United States v. Wade, 388 U.S. 218 (1967). Specifically, with respect to the Huntley hearing, Respondent moved to suppress a statement allegedly made by Respondent during the November 9 Interview ("Respondent's statement"). On January 25, 2006, Respondent withdrew his request for a Wade hearing and a Huntley hearing was held. At the conclusion of the hearing, the Honorable Charles Heffernan denied Respondent's motion finding that Respondent's statement, made in the presence of his mother and after being fully advised of his Miranda rights, was voluntarily and intelligently made.

A fact finding hearing was held before this Court on March 21, April 7, and May 16, 2006. At the fact finding hearing, the Presentment Agency called the complaining witness, Ms. Cassandra G., and Detective H. as witnesses. The Law Guardian called Respondent and his mother as witnesses. The Presentment Agency offered Respondent's Miranda sheet into evidence without objection.
The Rosario Violations
At the start of the fact finding hearing, and again in her written summation, the Law Guardian moved to dismiss the Petition based on the Presentment Agency's failure to turn over the handwritten scratch notes of the initial police interview of the complaining witness and Detective H.'s handwritten notes of the November 9 Interview. The Presentment Agency concedes that both documents contain Rosario information and should have been turned over to the Law Guardian. With respect to the scratch notes, it is undisputed that a typed written version of the scratch notes was produced. In addition, Detective H.'s DD5 of his interview of the complaining witness was also given to the Law Guardian. With respect to Detective H.'s handwritten notes of the November 9 Interview, Detective H. testified at fact finding, that while he recalls making notes while speaking to the Respondent, he does not know what he did with those notes or what otherwise may have happened to them.
The Law Guardian argues that Respondent's ability to cross examine both the complaining witness and Detective H. was significantly compromised by the failure to preserve and produce these documents. The Presentment Agency denies that any resulting prejudice was shown and further argues, that, if a sanction is imposed, it should take the form of an adverse inference, rather than dismissal of the Petition.
The Applicable Law
Where the Presentment Agency fails to exercise due care in preserving Rosario material, and the defendant is prejudiced thereby, "the [trial] court must impose an appropriate sanction." People v Wallace, 76 NY2d 953, 955(1990), quoting, People v Martinez, 71 NY2d 937, 940 (1988). Since some showing of prejudice is required, "the trial court must try to determine the content of the missing material." People v Bach., 80 NY2d 610, 616 (1992). Where, as here, a precise replication of missing documents cannot be achieved, the trial court's inquiry is limited to ascertaining the [*3]subject matter of each document and approximate the contents of each, with a view toward determining its relevance. See, e.g., People v. Haupt, 71 NY2d 929 (1988).
Turning first to the scratch notes, the Presentment Agency represented that it had extensively searched the files of the Police Department and could not find the handwritten complaint report. While it is true that the typed version was produced, there is no way for this Court to determine whether, in fact, that version is identical to the absent handwritten report, particularly since no party elicited testimony on this subject from any witness at the fact-finding hearing. With respect to Detective H.'s notes, the Presentment Agency offered no explanation at all as to why these notes were not preserved. Detective H. offered no information on this subject, other than recalling that he took notes.
Respondent claims that the absence of these documents prejudiced his ability to defend himself in this case. Specifically, Respondent claims that the "central issue" in this case is the identification by the complaining witness of the Respondent, on the one hand, and the nature of his alleged admission on the other. For example, the absence of these documents make it impossible to know whether, with respect to the scratch notes, the complaining witness initially identified someone other than the Respondent as the perpetrator of the acts complained of herein, or whether, with respect to Detective H.'s notes, the Respondent ever implicated himself in any way in this case.
After considering Respondent's arguments, the Court finds that Respondent has made a colorable claim of prejudice as to each violation. People v. Holman, 283 AD2d 440 (2nd Dept. 2001); see also People v. Joseph, 86 NY2d 565 (1995) (where it was impossible to determine whether information contained in a missing envelope was consistent with the People's position at trial, the People could not complain that the defendant's showing of prejudice was not sufficiently definite and clear).
Having found that Respondent has raised a colorable claim of prejudice, the Court turns to the question of an appropriate sanction. While no substitute for the missing scratch notes, the Court does note that Respondent had a full opportunity to cross-examine the complaining witness on the subject of what information she had initially given the police. In addition, the Law Guardian could have called the police officer who took the report to inquire as to what information was given by the complaining witness at the initial interview and to elicit what, if any, differences may have existed between that version and the absent handwritten original.
The Court reaches a similar conclusion with respect to Detective H.'s notes of the November 9 Interview. Here, the Law Guardian also had an opportunity to cross-examine Detective H. both as to the circumstances surrounding the taking of Respondent's statement and the contents of his statement both at trial and at the Huntley hearing. While it is true that the existence of Detective H.'s handwritten notes may have aided that witness' recollection at trial, this would affect the weight to be afforded to his testimony. The Law Guardian was free to argue, as she did, that Detective H.'s credibility was severely compromised by his failure to preserve his notes and his alleged complete lack of recollection as to what he did with them, particularly since he was careful to preserve the DD5 of his interview with the complaining witness and the Miranda sheet signed by Respondent and [*4]his mother.
Having considered these issues, and mindful that dismissal of the Petition is a "drastic remedy" to be imposed only in the most egregious cases, People v. Baez, 166 AD2d 256 (1st Dept. 1990), this Court finds that an adverse inference is appropriate and proportionate to the harm that may have resulted from the failure of the Presentment Agency to preserve and produce both sets of notes. People v. Martinez, 71 NY2d 937, 940 (1988).
The Testimony at Fact Finding
The Complaining Witness
 Cassandra G., the complaining witness, testified that on November 2, 2005, she was walking home from school, at the regular dismissal time, between 2:00 or 2:30, talking to her grandmother on her cell phone when a boy of "tanish color" pushed her from behind. He grabbed her cell phone, causing the cell phone to flip close, pinching her finger. She further testified that when the phone flipped closed, she loosened her grip on the phone. The boy ran away. Ms. G. testified that, although it was the regular dismissal time and there were only two routes to go home from school, only two other children were walking in the same direction as Ms. G. The cell phone was returned the next day by a student named Brandon.
Detective H.
Detective H. testified that after he interviewed Ms. G., he called Respondent's Mother and asked her and the Respondent to come to the precinct. When Respondent and his mother arrived, after being advised of his rights, Respondent made a statement. Specifically, on the subject of what Respondent told him, Detective H. testified:
 "...after school they both go to I.S. 27 and when they left school there was a group of people, boys and girls surrounding Cassandra and they took her cell phone, she actually dropped it to the floor and somebody picked up the cell phone and that then they started passing the cell phone around." Tr. 4/ 7/06, p. 8, ll. 13 - 17. (italicize added)
. . .
"At one part as they were passing it around he took the cell phone and he fled with the cell phone." Tr. 4/7/06, p. 8., ll. 21 - 22.
Detective H. further stated, on cross-examination that he did not ask Respondent to give a written statement because he "did not think he would get a written statement" from this Respondent. Tr. 4/7/06, p. 20, ll. 24 - 25. 
 It is undisputed in this case that the subject cell phone was recovered when another boy, Brandon, returned it to the school principal. According to Detective H., Respondent told him [*5]Brandon was involved in the incident, but no attempt was made to interview Brandon. Detective H. further testified that when questioning the complaining witness as to who returned the phone, she stated that she did not want to get anyone else involved.
Respondent
Respondent and his mother also testified. Respondent claimed that after school there was a group of children and one child pushed Ms. G. Ms. G.' phone dropped to the floor. They started grabbing the phone and a girl took off with the phone. Ms. G. started crying and she ran home. At the time Respondent observed this incident he was standing approximately ten feet behind the complaining witness.
Respondent's mother
Respondent's mother testified that her son told her a similar account of what had occurred that day. Respondent's mother noted that Respondent has his own cell phone. She acknowledged that while Respondent did sometimes lie about "little" things such as whether he had done all his homework, she did not believe he was lying about this incident.
Findings of Fact
& Conclusion of Law
In a juvenile delinquency case, the Presentment Agency must prove each element of each offense charged beyond a reasonable doubt and that Respondent is the person who committed the crime. Family Court Act § 342.2; People v. Whalen, 59 NY2d 273, 279 (1983). Reasonable doubt has been defined as a doubt that a "reasonable person" would entertain "because of the evidence that was presented or because of lack of convincing evidence". People v. Cubino, 88 NY2d 998, 100 (1996); People v. Radcliffe, 232 NY 249 (1921); see also People v. Antommarchi, 80 NY2d 247, 252 (1992) (reasonable doubt is an "honest doubt of the defendant's guilt for which a reason exists beyond the nature and quality of the evidence"). After carefully considering the testimony of Ms. G. and Detective H., and observing them as they testified, this Court finds that the Presentment Agency has failed to meet its burden with respect to any of the offenses alleged in the Petition.
Turning first to Detective H., this Court is not at all persuaded that Detective H. accurately and specifically recalled what Respondent said in the juvenile room on November 9, 2005. On the important subject of what Respondent claimed he did with the cell phone, this Detective stated that Respondent said he "fled" with the phone. It was not until he was asked on cross-examination, that Detective H. conceded that Respondent never used that term at all. As to whether Respondent told the Detective "we" took the cell phone (implicating Respondent) or "they" took the cell phone (suggesting Respondent was not involved), Detective H.'s testimony was confusing at best. Accordingly, with respect to the only subject for which this witness was called (i.e Respondent's alleged admission), this Court does not find the Detective's testimony reliable or persuasive. The adverse inference which must be drawn based on this witness' failure to preserve his notes of this [*6]account leads this Court to further doubt the reliability of this witness' testimony.

Ms. G., the Presentment Agency's remaining witness, was equally unpersuasive as to her account of what happened. While confident at certain times during her testimony, when recounting the events of the theft of the cell phone, she was indecisive and doubtful. Careful review of Ms. G.'s testimony indicates that during this encounter she was pushed from behind. Thereafter, she quickly turned her head and allegedly saw a boy "of tanish color" previously unknown to her, who she later identified as Respondent. On direct examination, she recalled that he was wearing a blue short sleeve shirt (in November); on cross- examination, she further stated he was wearing dungarees. She stated that she allegedly saw his hand as he reached from behind her and saw him run away from her, notwithstanding that she was not wearing her eyeglasses prescribed for near sightedness.
After carefully considering the complaining witness' testimony and observing her as she testified, the Court seriously doubts the reliability of her identification of the Respondent as the boy who stole her cell phone. See People v. Kyle O., 205 AD2d 541 (2nd Dept. 1994)(dismissing petition on single eyewitness case where the accuracy of the complainant's description was questionable and testimony was frequently uncertain and inconsistent). The adverse inference, which must be drawn with respect to this witness' initial identification of the perpetrator of these acts, provides further support for the Court's reservations as to the reliability of her statements in this regard.
The Court, having found both of the Presentment Agency's witnesses not credible, finds that the Presentment Agency has failed to prove the allegations of the Petition beyond a reasonable doubt. Having reached this conclusion, the Court need not consider the testimony of the Respondent and his mother. If such testimony had to be considered, however, this Court would credit Respondent's account. The Court attributes little relevance, to the testimony of Respondent's mother, as she was not present at the time these events occurred.
E N T E R:
__________________________________________
CATHERINE M. DiDOMENICO
FAMILY COURT - RICHMOND COUNTY
Dated: Staten Island, New York
July 25, 2006

Footnotes

Footnote 1:The Law Guardian suggests in its written summation that a third Rosario violation occurred when the Presentment Agency failed to produce the notes of an alleged interview between Detective H. and the complaining witness. As there is no specific evidence to suggest that notes were taken by Detective H. during his interview with the complaining witness, this argument is denied as not supported by the record.